**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL ANDERSON, | : |
| JOEL PACHECO, by his parents and guardians, | : |
| ANA and EMILIO PACHECO, and | : |
| VISION FOR EQUALITY, a non-profit | :   Civ. No. 13-5374-JD |
| corporation, | : |
| | : |
| Plaintiffs, | : |
| v. | : |
| | : |
| THE FRANKLIN INSTITUTE, | : |
| | : |
| Defendant. | : |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS**

Plaintiffs Michael Anderson, Joel Pacheco, and Vision for Equality, by their counsel, hereby

file this memorandum of law in support of their opposition to Defendant The Franklin Institute's

motion to dismiss.

**I.      FACTS**

**Plaintiff Michael Anderson**

Plaintiff Michael Anderson is a 31 year old man with physical impairments that substantially

limit one or more of his major life activities, including but not limited to eating, mobility,

toileting, bathing, dressing, and transferring.  Mr. Anderson has very limited manual dexterity.

(Complaint at ¶¶ 10 and 15, hereinafter "Comp.").  He has cerebral palsy and a spatial learning

impairment. (Comp. ¶ 17).  The only activity he can do with his hands is to drive his power

wheelchair that he uses for ambulation.  (Comp. ¶ 15).

Mr. Anderson requires and has personal attendants 24 hours a day, seven days a week. (Comp. ¶ 18).  Mr. Anderson's personal attendants provide him support and assistance with all of his activities of daily living, including mobility, dressing, transferring, shifting weight, toileting, and eating.  (Comp. ¶¶ 18 and 19).

 His personal attendants are paid from the Pennsylvania Department of Welfare's Medicaid program to assist him with his activities of daily living. (Comp. ¶ 18).

Mr. Anderson has very little control over his body. (Comp. ¶ 20). He cannot shift his body position and cannot do any weight changes without his personal attendants' assistance.  He has high spasticity that he cannot control.  His personal attendants adjust his wheelchair and pull him upright to avoid decubitus ulcers.  If Mr. Anderson slides too far forward or is leaning too far back in his wheelchair, the personal attendants must lift him under his arms so he can sit properly in the wheelchair and can therefore use the wheelchair's joystick for direction. If his head falls to one-side, the personal attendants must straighten it.  Mr. Anderson requires readjustment in his wheelchair about two times in every two hours. *Id.*

Plaintiff Anderson lives with other individuals who are also individuals with disabilities. (Comp. ¶ 21). With the assistance of his personal attendants he regularly attends numerous activities, including but not limited to going to the Art Museum, movies, bowling, shopping at Malls, and eating and drinking in restaurants.  (Comp. ¶¶ 23 and 24).

Plaintiff Anderson has visited The Franklin Institute on numerous occasions. (Comp. ¶ 25). He requires the personal assistance services from his attendants so he can participate in and enjoy the Defendant's services and programs. (Comp. ¶¶ 2 and 10).  Without his personal attendants, Plaintiff Anderson cannot attend The Franklin Institute and cannot receive the same benefits from The Franklin Institute as nondisabled individuals. (Comp. ¶¶  2 and 27).

In order for Plaintiff Anderson to gain admission and to use the various activities in The Franklin Institute, Defendant requires that he pay for his own admission and also pay a separate admission fee for his attendant. (Comp. ¶¶ 26 and 28).   The only purpose of the personal attendant attending The Franklin Institute is to provide personal assistance services for Mr. Anderson, including manually manipulating various devices, reading the signs on exhibits (he has a visual tracking disability that makes it difficult for him to read a multi-line text), assisting with his toileting needs, readjusting his sitting in his wheelchair, and eating and drinking in the dining area. (Comp. ¶ 26).

With an attendant, he is otherwise qualified to receive the benefits and services from The Franklin Institute.  (Comp. ¶ 16).

**Plaintiff Joel Pacheco**

Joel Pacheco is a 24 year old man with physical and developmental impairments that substantially limit one or more of his major life activities, including but not limited to eating, toileting, mobility, bathing, dressing, and transferring. (Comp. ¶ 29).  Mr. Pacheco has cerebral palsy, is intellectually and developmentally disabled, and is nonverbal. (Comp. ¶ 31).

Mr. Pacheco has minimal manual dexterity and uses a wheelchair for ambulation. *Id.*   He can push his wheelchair for short-distances with his feet, but he requires assistance for longer distances. (Comp. ¶ 32).

Mr. Pacheco's personal attendants provide support with all of his activities of daily living, including dressing, transferring, mobility, shifting weight, and toileting. He uses a feeding tube for eating that the personal attendants assist with. (Comp. ¶ 36).

Plaintiff Pacheco has personal attendants seven days a week. (Comp. ¶ 33).  He receives his personal assistance services for 14 hours a day, five days a week, and 12 hours a day on the

weekends.[1]  (Comp. ¶ 34).  His personal attendants are paid from the Pennsylvania Department of Welfare's Medicaid program to assist him with all of his activities of daily living.  (Comp. ¶ 33).

With a personal attendant Mr. Pacheco takes public transportation, including the Frankford elevated trains and he goes out at least six times a week, visiting WalMart, supermarkets, Dave and Busters, movies, the Mint, Liberty Bell, concerts at Penn's Landing, the Gallery, Franklin Mills and Nashaminy Mall.   (Comp. ¶ 38).

Plaintiff Pacheco enjoys The Franklin Institute's interactive and moving exhibits. (Comp. ¶ 39).  He was a member at The Franklin Institute for several years but had to pay for two people, himself and a guest. (Comp. ¶ 39). When he recently renewed his membership in April, 2013, because of the cost Plaintiff Pacheco renewed it only for himself. (Comp. ¶ 39).  In order for Plaintiff Pacheco to gain admission to use his membership and to use the various activities in The Franklin Institute, he must now pay for his own admission, and the Franklin Institute requires he pay a separate admission fee for his attendant.  (Comp. ¶¶ 3 and 40).

He requires personal assistance services to attend and enjoy the activities and programs at The Franklin Institute. (Comp. ¶¶ 2 and 4).  Without a personal attendant, he cannot attend or participate in the activities or receive the benefits of Defendant's facilities, programs and services equal to the opportunities afforded nondisabled individuals. (Comp. ¶ 2).  With his attendant, he is otherwise qualified to receive the benefits and services from The Franklin Institute.  (Comp. ¶ 30).

---

[1]   He resides with his parents who provide personal assistance services for the remaining hours each day.  (Comp. ¶ 34).  His parents work full-time. (Comp. ¶ 35).

**Plaintiff Vision for Equality**

Plaintiff Vision for Equality provides support, information and referral services to people with intellectual and other developmental disabilities who require and receive personal assistance services from the Pennsylvania Department of Public Welfare's Medicaid program.  (Comp. ¶¶ 1 and 12).   Without their attendants, many people with intellectual and other developmental disabilities do not have the necessary intellectual abilities to attend and participate in Defendant's programs and activities equal to nondisabled persons. (Comp. ¶ 13).

Plaintiff Vision is funded by the Pennsylvania Department of Welfare to provide equal access to supports and services for people with intellectual and developmental disabilities so they can participate in community activities.  (Comp. ¶ 42).  Plaintiff's clients and members require personal assistance services to attend and enjoy the activities and programs at The Franklin Institute.  Without their personal attendants, Vision for Equality's intellectually and developmentally disabled clients and other disabled members can neither attend or participate in the activities at The Franklin Institute the same as nondisabled individuals, nor receive the benefits of Defendant's facilities, programs and services equal to the opportunities afforded nondisabled people, nor benefit from community programs and activities equally with nondisabled persons.  (Comp. ¶¶ 2 and 44).

**Defendant The Franklin Institute**

Defendant, The Franklin Institute, a non-profit Pennsylvania corporation located in Philadelphia, Pennsylvania, is a museum.  (Comp. ¶ 14).  The Franklin Institute requires that the Plaintiffs pay a separate admission surcharge for their personal attendants, even though their attendants are only assisting the Plaintiffs who could not enjoy the benefits of Defendant's programs and benefits without their attendants.  (Comp. ¶ 4).

## II.   Standard of Review

The Court may dismiss a claim under Federal Rules of Civil Procedure 12(b)(6) only if the Plaintiffs can prove no set of facts that would entitle them to relief.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quotation omitted); *accord Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir. 2009), 2009 WL 2501662 at *4 (3d Cir. Aug. 18, 2009).  Accepting as true a plaintiff's factual allegations and all reasonable factual inferences, a court must assess whether the plaintiffs have shown a plausible claim for relief and not "'the mere possibility of misconduct'."  *Fowler*, 2009 WL 2501662 at *5 (citing *Iqbal*, 129 S. Ct. at 1950).  The Third Circuit has emphasized that "standards of pleading are not the same as standards of proof."  *Fowler*, 2009 WL 2501662 at *8.  Plaintiffs in this case readily establish plausible claims for relief.

## III.   Introduction

Defendant's argument is summarized in its Motion to Dismiss [Doc. 12] and repeated in its introduction to its Memorandum of Law [Doc. 12-1 at 1].  Defendant contends that "it is not discrimination nor is it a denial of the full and equal enjoyment of the privilege of visiting the Franklin Institute to require every individual to purchase an admission ticket," (*Id.* at ¶ 1) and that it is "not required … to provide Plaintiffs' personal attendants, companions or any accompanying individuals with complimentary or even discounted admission." (*Id.* at ¶ 2). [2]

---

[2]   Plaintiffs' complaint regards only personal attendants who assist with activities of daily living – not "companions" or other "accompanying individuals."  The present action does not challenge Defendant's right to charge an admission fee for a family member, friend or associate who might accompany a person with a disability.  DOJ's regulation defines "companion" as "a family member, friend, or associate of an individual seeking access to, or participating in" the public accommodation's program." 28 CFR § 36.303 (c)(1)(i).

Many of Defendant's arguments sound disingenuous.  First, Plaintiffs "have not alleged that the Franklin Institute prohibits them from *entering its facility*, denies them *access to its facility*, or otherwise impedes them from enjoying its exhibits and services." Defendant Memorandum of Law [Doc.12-1 at 2 (emphases added)].  Plaintiffs have not challenged either the entering or physical access to the building.  However, they have challenged the "enjoyment" of the exhibits and services, once inside the building. Plaintiffs expressly plead that without their personal assistance services they cannot attend or participate in the activities at The Franklin Institute or receive the benefits of Defendant's facilities, programs and services equal to the opportunities afforded nondisabled individuals. (Comp. ¶ 2).  Defendant's argument ignores entirely what happens after everyone – nondisabled and disabled - enters the Franklin Institute's building.[3] Unlike nondisabled persons, in order for Plaintiffs to participate in and benefit fully and equally from Defendant's exhibits and services, after they enter the building, Plaintiffs require the assistance of their personal attendants to enjoy the exhibits and services.

Second, Defendant's statement that "*Plaintiffs were not denied access to any goods or services that Franklin Institute provides to non-disabled patrons*," *Id*. at 7 (emphasis in original), mischaracterizes Plaintiffs' claims.  Without their attendants, Plaintiffs cannot access and use any of the museum's interactive exhibits and programs.  Given their disabilities, without the assistance of their attendants Plaintiffs cannot enjoy (or even use) the "goods and services" that non-disabled patrons enjoy. The discrimination is requiring Plaintiffs pay an extra admission fee for the personal attendants whom Plaintiffs require to receive the same and equal benefits, goods and services that nondisabled enjoy.

---

[3]     Plaintiffs have not alleged any physical barriers once inside the building.

Third, Plaintiffs have never argued that the Franklin Institute charges a "surcharge *because* the [Plaintiffs'] are disabled."  *Id.* at 5 (emphasis added).  If Defendants did that, it would be intentional discrimination.  But just as Defendants could neither charge an extra fee for a person using a wheelchair for ambulation in the museum, nor charge an extra fee for a person who requires a service animal so that the person with a disability could enjoy the goods and services, nor can Defendants charge an extra fee for an attendant who is performing a very similar functions as a wheelchair or service animal.

Fourth, Plaintiffs do not "*conveniently* omit that a nondisabled person may require similar assistance – for instance, a minor's parent … and an individual accompanying someone with a broken leg…."  *Id.* at 5-6 (emphasis added).  Children and persons with broken legs were omitted because they are not protected under the ADA.

**IV**     **Argument**

Congress enacted the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12101 *et seq*., in 1990, finding that

> discrimination against individuals with disabilities persists in such critical areas as … public accommodations … and individuals with disabilities continually encounter various forms of discrimination, including … failure to make modifications to existing … practices….

42 U.S.C. § 12101(a)(3) and (5).  These Congressional Findings apply to the instant case, an action under Title III of the ADA, "Public Accommodations and Services Operated by Private Entities," 42 U.S.C. §§12181-89. [4]

**A. Defendant Discriminates in Denying Plaintiffs with the Opportunity to Participate and Benefit Equal to Nondisabled**

The general rule prohibiting discrimination by a public accommodation requires that:

---

[4]     Defendant is a "museum" and therefore subject to Title III's public accommodation mandates.  42 U.S.C. § 12181(7)(H).

> No individual shall be discriminated against on the basis of disability in the *full and equal enjoyment* of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation….

42 U.S.C. § 12182(a)(emphasis added).  One prohibition specifically regards "Participation in unequal benefits" and states that

> [i]t shall be discriminatory to afford an individual or class of individuals on the basis of a disability or disabilities … with the *opportunity to participate in or benefit* from a good, service, facility, privilege, advantage or accommodation *that is not equal to that afforded to other individuals*.

42 U.S.C. § 12182(b)(1)(A)(ii)(emphases added). [5]

Defendant Franklin Institute repeatedly argues that the "admission" fee to the museum (as a building or a facility) is the benefit in question and that the Franklin Institute requires Plaintiffs to pay the same admission fee that everyone else is required to pay, whether disabled or nondisabled. [6]  Defendant's narrow focus on the admission fee as the "benefit" is erroneous in at least two ways.

---

[5]     Federal regulations implementing Titles II and III of the ADA require similar equality of treatment.  *Compare* 28 CFR § 35.130 (Title II) *with* 28 CFR 36.201 (Title III).   Therefore, the Title II *Yeskey, infra* analysis applies to Title III.   In enacting the ADA, Congress statutorily required that the ADA's regulations comport with Section 504 of the Rehabilitation Act of 1973.   42 U.S.C. § 12134(b).   *See Addiction Specialists, Inc. v. The Township of Hampton and the Commonwealth of Pennsylvania,* 411 F.3d 399, n 4 (3d Cir. 2005), where the Third Circuit noted that "[a]lthough this regulation was passed pursuant to the ADA, the broad remedial language of the RA is similarly intended to extend relief beyond qualified individuals with disabilities. *See Frederick L. v. Dep't of Pub. Welfare of Pa.,* 364 F.3d 487, 491 (3d Cir.2004) (citing *Helen L. v. DiDario,* 46 F.3d 325, 330–32 (3d Cir.), *cert. denied,* 516 U.S. 813, 116 S.Ct. 64, 133 L.Ed.2d 26 (1995)) ("We have construed the provisions of the RA and the ADA in light of their close similarity of language and purpose").

[6]     The initial step is to determine the benefits that Defendant provides.  *See, e.g.,* *PGA Tour v. Casey Martin,* 532 U.S. 661 (2001) (equal "*access*" to compete was required and the walking rule was not an essential benefit in PGA tour); *cf. Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206, 118 S. Ct. 1952 (1998)(prison "benefits" included recreational "activities," medical "services," and educational "programs" including the prison library).

First, the goods, services and privileges go far beyond mere "admission" to the museum. People visit the museum to enjoy the enormous variety of activities and programs that occur within the museum, after they pay the admission fee. Defendant's position is like arguing that people pay for a sports event only to enter the facility or stadium without any reference to the actual sporting event or that people go to the movies just to pay to sit in the lobby.

Moreover, the United States Department of Justice noted, in its commentary to Title III's federal regulations, that "it is the public accommodation, and *not* the place of public accommodation, that is subject to the regulation's [and therefore statute's] nondiscrimination requirements." 28 CFR Part 36, App. C, "Guidance on ADA Regulations on Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities," comments to § 301(7)(emphasis added). The benefits to which Plaintiffs seek "full and equal enjoyment" are the activities after they enter the museum. They want "opportunity to participate in or benefit from" playing the Museum's interactive Armonica and exploring how the heart works, as well as to read and understand the many descriptions of the other activities which makes the museum interesting and famous.

For the plaintiffs, the "opportunity to participate in and benefit from" requires the personal assistance that their attendants provide. But for their attendants, the Plaintiffs cannot participate whatsoever in the museum's numerous interactive programs and activities. Without their attendants, Plaintiffs are unable to achieve the "equal" opportunity or benefit that nondisabled people receive after they enter the museum.

Second, Defendant's admission argument apparently assumes the ADA is a "disability-neutral" statute, and as long as the Franklin Institute makes everyone pay an admission fee, it treats disabled and nondisabled the same, and thus does not discriminate. Defendant apparently

believes that permitting the Plaintiffs not to pay an admission fee for their personal attendants would be "preferential" and therefore not neutral, even though the attendants were essential to achieve equality of benefits.  However, the Supreme Court has emphasized that

> preferences will sometimes prove necessary to achieve the Act's basic equal opportunity goal.  The Act requires preferences in the form of 'reasonable accommodations' that are needed for those with disabilities to obtain the *same ... opportunities* that those without disabilities automatically enjoy.  By definition any special 'accommodation' requires [a defendant] to treat [an individual] with a disability differently, i.e., preferentially.  And the fact that the difference in treatment violates a … disability-neutral rule cannot by itself place the accommodation beyond the Act's potential reach.

*US Airways, Inc. v. Barnett*, 535 U.S. 391. 429 (2002)(emphasis in original).

The ADA, like Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, requires that individuals with disabilities have the opportunity to achieve "meaningful access" to the benefits and programs being offered to nondisabled. In *Alexander v Choate.* 469 U.S. 287, 301 (1985), it was critical to the Supreme Court's analysis to recognize that "the handicapped typically are not similarly situated to the nonhandicapped." [7]   *See also Helen L v. DiDario, supra*.   Meaningful access may require different treatment for disabled persons than for nondisabled persons to achieve equal access for individuals who have disabilities.  It is critical in the instant action to recognize that the Plaintiffs have different needs than nondisabled and that their personal attendants are their bridge that provides them the opportunity for equal participation and benefits.  Thus, to treat the Plaintiffs the same as nondisabled by requiring they pay a separate admission fee for their personal attendants, disregards how the Plaintiffs are different from nondisabled and denies the Plaintiffs meaningful access to the Franklin Institute's benefits.

---

[7]   The Court pointed out that "[d]iscrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference – of benign neglect."  469 U.S. at 295.

### B.  Requiring Plaintiffs to Pay a Separate Admission Fee for their Personal Attendants is an Eligibility Criteria and Surcharge that Discriminate in Violation of the ADA

The ADA also prohibits "the imposition or application of *eligibility criteria* that *screen out or tend to screen out* an individual with a disability … *from fully and equally enjoying*" the public accommodation.  42 U.S.C. § 12182(b)(2)(A)(i) (emphases added).  In the instant action, the "eligibility criteria" is the requirement that Plaintiffs pay a separate admission fee for a personal attendant.

Before analyzing this provision, it is important to point out that Plaintiffs do not argue that there is "a presumption that disabled patrons are entitled to a benefit which exceeds that available to the general public," Defendant's Memorandum, [Doc. 12-1 at 5], quoting *Access Now, Inc. v. So. Fla. Stadium Corp.*, 161 F. Supp. 2d 1357,1367 (S.D. Fla. 2001]. To the contrary, the only time a disabled person is entitled to different treatment is when a public accommodation is denying them "from fully and equally enjoying" its benefits, and with a reasonable modification of its policies, they could achieve such equality. S*ee infra.* at Arg. C. For the same reason, Defendant's reliance on *Louie v. Nat'l Football League*, 185 F. Supp. 2d 1306 (S.D. Fla. (2002) and *Independent Living Resources v. Oregon Arena Corp*, 1 F. Supp. 2d 1159, 1170 (D. Or. 1998), Defendant's Memorandum, [Doc. 12-1 at 5], are misplaced because Plaintiffs do not argue they have a "special right" simply because they are disabled.

People with disabilities who require personal attendants for their activities of daily living are the only individuals for whom the Franklin Institute requires a second admission fee – one for the person with the disability and one fee for the personal attendant who is necessary to accompany and assist the person with the disability.  It is not different from requiring a blind person to pay an additional fee because they require a guide dog or requiring a deaf person to pay

for the services of a sign language interpreter.  Requiring additional payments either for the Plaintiffs who require a personal attendant, the blind person who requires a guide dog, or the deaf person who uses an interpreter has the same tendency to screen them out from going to the Franklin Institute. Without the personal attendant, guide dog and interpreter, individuals with disabilities who require these services are unable "to fully and equally enjoy" the museum.  The added expense of paying for these services as additional admission charges is an eligibility criteria that tends to screen out such individuals from using the museum.

Congress delegated Title III ADA rulemaking to the U.S. Department of Justice, which promulgated its regulations at 28 CFR Part 36.  The regulations track the statute and prohibit "eligibility criteria that screen out or tend to screen out" persons, who require personal attendant care services and without whom the Plaintiffs could not "fully and equally" enjoy the benefits and programs of a public accommodation.  28 CFR § 36.301(a).  DOJ commentary points out that section 36.301 "prohibits policies that *unnecessarily* imposes *requirements* or *burdens* on individuals that are not placed on others." 28 CFR Part 36, App. C to 36.301 (emphases added).

The federal regulations also prohibit public accommodations from

> impos[ing] a *surcharge* on a … group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and *reasonable modifications in policies*, practices, or procedures, that are required to provide that … group with the nondiscriminatory treatment required by the Act or this part.

28 CFR § 36.301(c)(emphases added), *see* 28 CFR § 36.303(f).

ADA surcharges have come up primarily in the context of additional fees for disability parking placards. Several Circuit Courts of Appeals have held that the annual fees for parking placards were discriminatory surcharges.  In *Dare v. California, Dep't of Motor Vehicles,* 191 F.3d 1167 (9th Cir. 1999), *cert. denied*, 531 U.S. 1190, 121 S.Ct. 1187 (2001), the Ninth Circuit

applied *Choate's* "meaningful access" mandate to hold that these fees violated the ADA. "The ADA requires special parking arrangements such as handicapped parking spaces. These spaces allow disabled people equal access to public buildings in which California provides services, programs and activities." *Id.* at 1172. Similarly, in *Klingler v. Director, Dep't of Revenue, Missouri*, 433 F.3d 1078, 1080 (8th Cir. 2006), the Eighth Circuit found the fees for parking placards discriminated against persons with disabilities. The Court noted that the ADA did not "specifically require states to offer removable parking placards to disabled individuals…. Rather than imposing a uniform one-size-fits-all method of [reasonable accommodation] compliance, the regulations provide flexibility by authorizing a variety of ways … to provide accessibility to disabled people." *See Massachusetts v. E*Trade Access,* 464 F. Supp. 52 (D. MA., 2006)(allowing blind customers to use accessible ATMs without surcharge).

## C. Plaintiffs' Requested Modification is both Reasonable and Necessary to Achieve Equal Opportunity to Enjoy the Museum's Activities and Programs

It is precisely because the Plaintiffs' disabilities prevent them from benefiting from the Franklin Institute's goods, services, programs, and activities that they require personal attendants, and therefore the Plaintiffs' request for a modification of the museum's admission fees policy. Due to their disabilities and without their personal attendants, the Plaintiffs cannot participate in or use the museum's programs. That nondisabled individuals and other disabled individuals can participate and benefit from Defendant's programs without attendants does not undercut Plaintiffs' discrimination claim.[8] To the contrary, it strengthens it, because Plaintiffs' reasonable modification request, from the museum's perspective, is extremely limited.

---

[8]     The *Helen L.* court, *supra* at 335-36, discussed a variant of Defendant's argument, when it dismissed DPW's argument that there was no discrimination because the services were provided only to persons with disabilities. Both the Circuit and the Supreme Court in *Choate,*

Following *Choate*'s recognition that "the handicapped typically are not similarly situated to the nonhandicapped," Congress defined discrimination to include the "failure to make *reasonable modifications* in policies, practices or procedures, when such modifications are *necessary to afford such goods, services, facilities, privileges, advantages, or accommodations…* to individuals with disabilities...." 42 U.S.C. § 12182(b)(2)(A)(ii)(emphases added).[9]  One of the most important aspects of the ADA is the Congressional recognition that the same treatment of disabled and nondisabled people often results in discrimination against disabled individuals. Congress recognized that modifying policies would be necessary to achieve equal opportunity in a public accommodation's programs and services. The Franklin Institute's refusal to modify its admission policy ignores how, with the requested modification of its admission fee policy for personal attendants, the Plaintiffs will have the same opportunity as nondisabled persons to fully and equally participate in and benefit from the museum's programs.

Defendant misunderstands the reasonable modification mandate when it argues that "[b]ecause the Franklin Institute's actions are not discriminatory under Title III, Plaintiffs are not entitled to a reasonable modification of that [admission fee] policy…."  [Doc. 12-1 at 9].  Rather, Defendant discriminates precisely because it refuses to make the modification, which if made would achieve equal access.  The requirement for a modification is triggered only when it is "necessary to afford" disabled persons access to, participation in, and equal opportunity to benefit from the public accommodation's services, programs and activities.

---

*supra at* 295 noted that discrimination against individuals with disabilities was more than disparate treatment of disabled as compared to the nondisabled.

[9]      The federal regulation, 28 CFR § 36.302(a), mirrors the statutory "reasonable modification" mandate.  The statute and regulation provide for a "fundamental alteration" defense of whether the request was "reasonable," "necessary," and/or "fundamentally alters" the nature of the program, 42 U.S.C. § 12182(B)(2)(A)(ii).   Congress afforded public accommodations the same defense of whether the "eligibility" criteria are "necessary," 42 U.S.C. § 12182(b)(2)(A(i).

In support of its reasonable modification argument, Defendant relies on three district court decisions. Defendant's Memorandum [Doc. 12-1 at 9].  Its reliance on *DIA v. National Pass, R.R.*, 418 F. Supp.2d 652 (E.D.Pa. 2005), [Doc. 12-1 at 9], is misplaced because the reasonable modification requested by DIA had been expressly trumped by a specific Congressional limitation. *See* 42 U.S.C. § 12162.  The modifications regarding accessibility that the DIA Plaintiffs requested exceeded the Secretary of Transportation's authority and duty under the ADA and therefore could not be "reasonable."  This was exactly the same situation in *Cornilles v. Regal Cinemas, Inc*., 2002 U.S. Dist. LEXIS 7025 (D. Or. Jan. 3, 2002), where the Congressional history explicitly excluded open captioning for movies.[10]  Therefore, such a modification request was *per se* not "reasonable."  The third decision states that the ADA does not "impose a general duty …to provide *all* reasonable modifications that a plaintiff requests." [Doc. 12-1 at 9 quoting *Doe v. The Haverford School*, 2003 U.S.Dist. LEXIS 15473 [*22](E.D. Pa. Aug. 5, 2003)(emphasis added)].  Plaintiffs agree that the ADA does not require either a "general duty" or any requirement for "all" modification requests. The only requests for modifications that the ADA requires are those that are both "reasonable" and "necessary" to achieve equality.

Subsequent to the Supreme Court's *Choate* Section 504 holding regarding reasonable modifications, the Court, *PGA Tour v. Martin, supra*, (a Title III ADA case), elaborated on the breadth of such modifications and held that Mr. Martin's use of a golf cart, instead of walking,

---

[10]    The *Cornilles* Court at [*15] cites the House Report …[stating] that Congress did not intend for the ADA to require open captioning of all feature films shown in movie theaters:

>           Open-captioning, for example, of feature films playing in movie theaters, is not required by this legislation. Film makers, are, however, encouraged to produce and distribute open-captioned versions of films, and theaters are encouraged to have at least some pre-announced screenings of a captioned version of feature films.

was reasonable, did not "fundamentally alter the nature" of the game of golf, and was necessary for him to participate in the tournament. *PGA* is analogous to the Plaintiffs in the instant action. The Court noted that Mr. Martin could hit the golf ball and play the game the same as nondisabled competitors, as long as he could use a golf cart. Mr. Martin and the Plaintiffs in the instant action ask only that the modifications occur so they can participate and benefit equally with nondisabled persons.  Without the golf car and without Plaintiffs' attendants, neither can participate, let alone equally to nondisabled persons.  The *PGA* Supreme Court's analysis held that permitting Mr. Martin's use of the golf car, instead of walking, was a

> modification [that] would [not] 'fundamentally alter the nature' of the goods, services and privileges.  § 12182(b)(2)(A)(ii).  In other words, disabled individuals must be given *access* to the same goods, services, and privileges that others enjoy.

532 U.S. at 698 (emphasis in original).  Permitting the use of the golf cart and waiving the admission fee for the attendants are accommodations that are required under the *PGA's* Court's analysis, because they do not fundamentally alter the nature of the program or present an undue burden. [11]

Compared to many of requests for modifications to achieve equal opportunity, the request in the instant action is, from the Defendant's perspective, *de minimus* and is comparable to the request in *Nathanson v. the Medical College of Pennsylvania,* 926 F. 2d 1368, 1383-87 (3d Cir.

---

[11]    The Supreme Court has required an ADA "'reasonable modifications' to avoid discrimination," *Olmstead v. L.C. ex. Rel. Zimring*, 119 S.Ct. 2176, 2185, 2188 (1999).  As in *PGA*, the *Olmstead* analysis focused primarily on whether or not the accommodation would "fundamentally alter" the nature of the program. "Reasonable accommodations" have also been required in other disability contexts.  *See, e.g., City of Edmonds v. Oxford House, Inc*.  514 U.S. 725 (1995)(requiring under the federal Fair Housing Act that the zoning limitations on number of people in a dwelling be modified to accommodate disabled persons); *U.S. v. City of Philadelphia*, 838 F. Supp. 223 (E.D., Pa 1993)Pollak, J.)(requiring modification in the zoning code for homeless persons, citing 42 U.S.C. § 3604(f)(3)(B),  which has the same requirements as the ADA's equal opportunity provisions).

1991)(requiring special seating arrangements).  In a much more difficult modification request, the Third Circuit held that modifying a residency requirement which relied on the mental capacity was reasonable for a person with profound mental limitations because it neither altered the essential nature of the program nor imposed an undue burden.  *Juvelis v. Snider*, 68 F.3d 648, 652 (3d Cir. 1995).  See *The American Council of the Blind v. Paulson*, 525 F.3d 1256 (D.C. Cir. 2008)(holding that the United States Treasury's paper currency denied visually impaired persons meaningful access to currency and altering the currency was not unduly burdensome).

Defendant's argument that "it is not discrimination nor is it a denial of the full and equal enjoyment of the privilege of visiting the Franklin Institute to require every individual to purchase an admission ticket," [Doc 12 at 1], does not address whether the requested accommodation is "reasonable" or "necessary," and ignores both the impairments that underlie the Plaintiff's disabilities and the Congressional purpose of the ADA's accommodation mandate. Equal treatment requires recognizing the differences and limitations of the Plaintiffs and then determining what a public accommodation must do differently to take into account those differences to achieve equality.

In the instant case, unlike nondisabled persons, the Plaintiffs cannot use or participate in the Franklin Institute's programs and activities without their attendants. While the Defendant is not required under the ADA to provide Plaintiffs with "services of a personal nature including assistance in eating, toileting, or dressing,"  28 CFR § 36.306,  Defendant could offer such services in which case the Plaintiffs' modification request in the instant action would not then be "reasonable" or  "necessary."  *Compare* 28 CFR § 36.306 *with* § 36.303(requiring a public accommodation to provide, *inter alia*, qualified interpreters, brailed materials, effective

communication).   Because Defendant is not required to and has chosen not to provide "services of a personal nature," the Plaintiffs must provide these services themselves.

Other than lost revenue, Plaintiffs do not understand why Defendant charges an extra admission fee for Plaintiffs' personal attendants, for unlike movie houses, concerts or sports venues which have a limited number of seats per show, a museum has virtually an unlimited capacity to admit persons.  Permitting personal attendants to accompany and assist the Plaintiffs without payment of an admission fee does not come close to a "fundamental alteration" to Defendant's programs and activities because it does not impact whatsoever "the nature" of what the museum does. [12]

In addition to the fundamental alteration defense, DOJ's regulations provide that a reasonable modification need not be provided if the accommodation requested is an "undue burden, i.e., significant difficulty or expense."  28 CFR § 36.303(a).  If the Defendant could prove a requested accommodation would result in an "undue burden," i.e., the requested modification was too expensive, then it would not discriminate if it required a separate admission fee.  It is hard to imagine that permitting Plaintiffs to pay for their own admission and not pay for their attendants will cause the Franklin Institute an "undue burden."

The requested modification is necessary for the Plaintiffs from an expense and cost perspective.  The Plaintiffs receive personal attendants through the federal Medicaid program and therefore must satisfy the low-income requirements of that program. (Comp. ¶ 1).  A double

---

[12]     The DOJ commentary to the regulations provide as an example a "museum would not be required to modify a policy barring the touching of delicate works of art in order to enhance the participation of individuals who are blind, if the touching threatened the integrity of the work. Damage to a museum piece would clearly be a fundamental alteration…." 28 CFR Part 36, App. C for § 36.302.

payment of admission charge is very expensive. By requiring Plaintiffs to pay for two people, it "tend[s] to screen" them out from "enjoying" the museum's goods and services.[13]

Defendant's primary defense is a DOJ document "Ticket Sales," Def. Memorandum of Law, [Doc. 12-1 at 8 and attachment Doc.12-2 at 4]. Defendant incorrectly cites this document, when it states "*it did not impose a requirement that a public accommodation provide discounted – must less complementary -  entrance, admission or fare for a personal attendant or companion.*" *Id.* (Italicized in original). The DOJ document does not mention personal attendants. It is limited to a "companion" and permits the purchase of "up to three additional seats for their companions in the same row and the seats must be contiguous with the accessible seats." [Doc. 12-2 at 4]. The federal "Ticketing" regulations focus on physical spacing for a wheelchair and the seats next to this spacing, as well as sales, identification of seating and prices for accessible seats. 28 CFR § 36.302(f). *Cf. Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1087 (9th Cir. 2004).

Most importantly, the DOJ regulations define "companion" as "a family member, friend, or associate of an individual seeking access to, or participating in" the public accommodation's program. 28 CFR § 36.303(c)(1)(i). While a family member and friend could and sometimes may perform some personal attendant services, Plaintiffs have not requested such family members or friends be admitted free. Rather, Plaintiffs' requested modification is much more narrowly focused on paid attendants funded by the Pennsylvania Department of Welfare's Medicaid program. These attendants are working at providing attendant care services because the State has determined the Plaintiffs require such assistance. Plaintiffs' attendants seek

---

[13]     The criterion that "tends to" screen out is discriminatory even if the second admission charge is "not creating a direct bar to individuals with disabilities," but "indirectly prevent or limit the [individual with a disability's] ability to participate." 28 CFR Part 36, App. C for § 36.301.

admission to the Franklin Institute not by their own choice; they are there because the Plaintiffs decide that they want to attend the museum and the attendant must attend to provide whatever personal services may be required.

Because personal attendants are not "companions," Defendant's argument D, [Doc. 12-1 at 10-11], is therefore not relevant.

## **CONCLUSION**

For the above reasons, Defendant The Franklin Institute's Motion to Dismiss should be denied.

Dated: December 13, 2013                     Respectfully submitted,


                                              */s/ Stephen F. Gold*
                                              Stephen F. Gold
                                              Pa. Bar # 09880
                                              1709 Benjamin Franklin Parkway
                                              Second Floor
                                              Philadelphia, PA.  19103
                                              Tel. 215-627-7100, ext. 227
                                              Fax 215-627-3183
                                              E-Mail: stevegoldada1@gmail.com

                                              Attorney for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen F. Gold, hereby certify that a true and correct copy of the foregoing was filed electronically and is available for viewing and downloading from the ECF system of the U.S. District Court for the Eastern District of Pennsylvania, and that I served the same via electronic filing on December 13, 2013 upon the following:

Anne Marie Estevez, aestevez@morganlewis.com
Beth S. Jospeh, bjoseph@morganlewis.com
Cailin Heilig, cheilig@morganlewis.com

*/s/ Stephen F. Gold*
Stephen F. Gold