**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MICHAEL ANDERSON; JOEL PACHECO, by his parents and guardians, ANA and EMILIO PACHECO and VISION FOR EQUALITY, a non-profit corporation,

*Plaintiffs*

v.

THE FRANKLIN INSTITUTE,

*Defendant.*

Civil Action No. 13-5374

**DEFENDANT THE FRANKLIN INSTITUTE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant THE FRANKLIN INSTITUTE ("Defendant" or "Franklin Institute") respectfully submits this Reply in support of its Motion to Dismiss Plaintiffs' Complaint and states as follows:

Almost twenty-five years after the ADA was passed, Plaintiffs are attempting, without any authority, to create a sweeping expansion of the law to require any public accommodation that charges an entrance fee to provide free admission to companions of individuals with disabilities, which under the same logic argued by Plaintiffs here, would include amusement parks, museums, movie theaters, symphonies, ballet, festivals, and sporting events. However, this is an interpretation not supported by the statutory language of the ADA, any of its implementing regulations, or any court decision in the last two and half decades. In Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss (D.E. # 15) ("Plaintiffs' Opposition"), Plaintiffs rely on inapplicable statutory and case law under Title I and Title II of the ADA, mischaracterize relevant DOJ guidance, and still fail to cite any statutory provision, implementing regulation or case in which a public accommodation under Title III has been

required to allow paid attendants or companions of disabled individuals to enter their facilities for free when an admission fee is charged to all.

Plaintiffs further admit that they may enter and enjoy physical access to the Franklin Institute's facility and that there is no violation of the ADA with respect to any physical barriers. *See* Plaintiffs' Opposition at p. 7. Further, in their Opposition, Plaintiffs also fail to address, and, thus, concede Franklin Institute's arguments with respect to Counts III and IV of the Complaint (Methods of Administration and Auxiliary Aids).

**A. <u>Applicable Law</u>**

As an initial matter, Plaintiffs incorrectly state that the law interpreting Title I of the ADA, which applies only to the employment context, and Title II, which applies only to public entities, and that interpreting Title III, applicable here, are interchangeable. *See* Plaintiffs' Opposition, p. 9, n. 5. Indeed, Plaintiffs rely heavily on inapposite case law interpreting Title I and Title II, in a futile attempt to create a new cause of action under Title III. *See e.g., Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998) (interpreting Title II and holding that state prisons are subject to the ADA); *Helen L. v. DiDario*, 46 F.3d 325 (3rd Cir. 1995) (interpreting Title II and addressing the government's obligation to provide care to institutionalized individuals in an integrated setting); *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) (interpreting Title I and holding that an individualized analysis is required to determine whether any particular job assignment would constitute an undue hardship). However, the various sections of the ADA differ significantly as the employment context is vastly different than access to facilities by the public and because public entities such as state and local governments have a great obligation to provide programs and services to individuals with disabilities than private ones. *Compare* 42 U.S.C. § 12112 *with* 42 U.S.C. § 12132 *and* 42 U.S.C. § 12182. Further, despite Plaintiffs' incorrect characterization, Congress only required the

regulations for public entities under Title II to comport with the Rehabilitation Act – not those promulgated under Title III – again, because different standards apply. *See* 42 U.S.C. § 12134 (b) (defining relationship to other regulations under Title II); Plaintiffs' Opposition, p. 11. Moreover, as the House Report on the ADA noted, "[u]nlike the other titles in this Act, title II does not list all of the forms of discrimination that the title is intended to prohibit." H.R. Rep. No. 485 (III), 101st Cong., 2d Sess., 52 (1990). Accordingly, the over a dozen cases cited by Plaintiffs in their Opposition interpreting Title I & II and not Title III (none of which requires free admission to paid companions) should be disregarded.

**B. Plaintiffs' Attempt to Create a "Personal Attendant" Category Not Found in the Law In Order Must Fail**

Trying to create a new cause of action where one does not exist, Plaintiffs futilely attempt to differentiate between a "companion" and a "personal attendant." The phrase "personal attendant" is not found in the ADA or its implementing regulations. The only time the term "companion" is defined in the ADA's implementing regulations, it includes the following: an "associate of an individual seeking access to, or participating in" a public accommodation's program. *See* 28 C.F.R. § 36.303(c)(1)(i). This definition is clearly broad enough to encompass Plaintiffs' purported definition of a personal attendant as someone who helps with the activities of daily living. *See* Plaintiffs' Opposition at p. 6, n. 2. Nor is there any requirement in the ADA, its regulations or in any federal case law, requiring a public accommodation to provide free admission to a companion or a personal attendant as a "reasonable modification" of its policies[1]. *See, e.g. Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.,* 530 U.S. 1, 6

[1] Allowing human beings free admission to a facility where all are charged an entrance fee is not the equivalent of allowing in service animals or wheelchairs without additional cost as Plaintiffs argue. *See* Opposition at p. 12-13. Aside from the obvious, the ADA explicitly requires that service animals be allowed in public accommodations and sets forth detailed regulations for wheelchair access. *See, e.g.* 28 C.F.R. § 36.302(b)(2) (setting forth the standards for access to service animals).

(2000) (quoting *Conn. Nat. Bank v. Germain,* 503 U.S. 249, 254, (1992)) ("[W]e begin with the understanding that Congress 'says in a statute what it means and means in a statute what it says there.'" … A court will not "read additional requirements into the text where the statute is silent."). Taking Plaintiffs' arguments to their logical end, Plaintiffs are in fact asserting that they should never have to pay an entrance fee for a companion or personal attendant including movie theaters, sporting events, amusement parks, concerts, festivals, theatrical events, and museums. This type of broad reaching mandate of free admission or two for the price of one at every paid event or facility cannot be read into a law that has been in place for almost twenty-five years without a single statutory provision, regulation or case that has required such an extreme outcome.

And, as discussed in detail in Defendant's Memorandum of Law in Support of its Motion to Dismiss, DOJ guidance on ticket sales *explicitly* states that individuals are expected to purchase tickets for their companions[2]. *See* Guidance on Ticket Sales, U.S. D.O.J. Civil Rights Division, printout attached as Exhibit A to Defendant's Memorandum of Law in Support of its Motion to Dismiss, p. 4 ("[p]eople purchasing a ticket for an accessible seat may *purchase* up to three additional seats for their companions in the same row.").

Notably, while the DOJ addressed the ADA's nondiscrimination requirements regarding ticket sales, ticket prices, the identification of available accessible seating, purchasing multiple tickets for companions, ticket transfer, the secondary ticket market, the hold and release of tickets for accessible seating, and the prevention of fraud in the purchase of tickets for accessible seating, *it did not impose a requirement that a public accommodation provide discounted – much*

[2] The DOJ, whose "views are entitled to deference" as the "agency directed by Congress to issue implementing regulations, see 42 U.S.C. § 12186(b), to render technical assistance explaining the responsibilities of covered individuals and institutions, § 12206(c), and to enforce Title III in court, § 12188(b)" have not promulgated any requirement of free – or even reduced - admission to companions or personal attendants. *Bragdon v. Abbott*, 524 U.S. 624, 646 (1998) (emphasis added).

*less complimentary – entrance, admission, or fare for a personal attendant or companion*.[3] Accordingly, the plain language of the DOJ's guidance highlights that Plaintiffs' claims are insufficient as a matter of law because Franklin Institute is not required under the ADA to provide complimentary admission to personal attendants, who clearly fall within the definition of companions – whatever label Plaintiffs would prefer to use instead. Thus, Plaintiffs' demand that their companions be granted free admission cannot constitute a "reasonable modification" of Franklin Institute's policies.

**C. <u>There Has Been No Unequal Benefit</u>**

Attempting to create a claim where one simply does not exist, Plaintiffs next argue that Franklin Institute discriminates against them by providing the "unequal benefit" of requiring each patron, including those accompanying disabled individuals, to pay an admission fee. However, the requirement that each visitor to the Franklin Institute pay an admission fee does not deny Plaintiffs access to, or participation in, the museum's programs.

In support of their argument, Plaintiffs rely heavily on the Supreme Court's decision in *PGA Tour v. Casey Martin*, 532 U.S. 661 (2001), in which a change in organization's rules and procedures was required to allow the plaintiff, who had a mobility impairment, to use a golf cart in order to be able to participate in the PGA tour and its related schools. Without the use of a golf cart, the plaintiff's disability prevented him from being able to play golf competitively. *Id.*

Here, in contrast to *Casey Martin*, Franklin Institute does not have a policy of banning personal attendants or interfering in any way with access to its facility by personal attendants. Plaintiffs and their companions may freely access and enjoy Franklin Institute's programs. What

---

[3]If the DOJ, or any interpreting agency, had wanted to draft a regulation or statutory requirement waiving admission fees into public accommodations for personal attendants, it clearly knows how to do so — but instead chose not to. *See, e.g.,* 49 C.F.R. § 37.131(c)(3)("A personal care attendant shall not be charged for complementary paratransit service.").

Plaintiffs are truly objecting to is the payment required for each visitor to the facility, including any personal attendants- Franklin Institute's even-handed policy requiring every visitor to pay an admission fee -just as Hershey Park, Regal Cinema, or the Wells Fargo Center do- in no way constitutes an unequal benefit towards Plaintiffs.

Inherent in the sole, narrow issue upon which the Complaint is based — that any disabled individual "who requires personal assistance services" should be allowed free admission for any companion accompanying them — "is a presumption that disabled patrons are entitled to a benefit which exceeds that available to the general public."[4] *Access Now, Inc. v. So. Fla. Stadium Corp*., 161 F. Supp. 2d 1357, 1367 (S.D. Fla. 2001) (granting defendant's motion for summary judgment because "[t]he Act does not require a facility to afford a disabled guest a greater opportunity to purchase seats than his able-bodied counterpart"); *see also Bodley v. Macayo Restaurants, LLC*, 546 F. Supp. 2d 696 (D. Ariz. 2008) (plaintiff, who is in a wheelchair, was not entitled to be seated inside when his seating request was treated equally to the other patrons); *Louie v. Nat'l Football League*, 185 F. Supp. 2d 1306, 1309 (S.D. Fla. 2002) (noting that "the ADA does not require the NFL to provide [the plaintiff] or other disabled individuals a ticket to the Super Bowl due to their disabled status, rather, the ADA prohibits the NFL from denying [the plaintiff] and other disabled individuals an opportunity to obtain a Super Bowl ticket"); *Independent Living Resources v. Oregon Arena Corp.*, 1 F. Supp. 2d 1159, 1170 (D. Or. 1998) (disabled customers do not have a special right under the ADA to purchase tickets for events if comparable tickets would not be available to non-disabled customers).

[4] Plaintiffs' reliance on *Helen L. v. DiDario*, 46 F.3d 325 (3rd Cir. 1995), is similarly misplaced. The *Helen L.* Court was interpreting provisions of Title II of the ADA, not Title III, and was addressing the issue of the state's obligation to provide care to institutionalized individuals in the most integrated setting practicable, which is inapplicable here.

This is not what is meant by the ADA's "unequal benefit" provision, as illustrated by the Department of Justice's commentary in its Guidance on ADA Regulations on Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 28 C.F.R. Part 36, App. C, cited by the Plaintiffs themselves ("DOJ Appendix C commentary"), providing a sole example of what would constitute an unequal benefit: "For example, persons with disabilities must not be limited to certain performances at a theater." (interpreting Section 36.202(b)); *see also Cornilles* v. *Regal Cinemas, Inc.,* 2002 U.S. Dist. LEXIS 7025, at *8 (D. Or. Jan. 3, 2002) (granting defendant's motion for summary judgment because closed captioning was not required under the ADA, the regulations implementing Title III, or guidance promulgated in a House Report and stating "Title III does not require Defendants to provide additional access to Plaintiffs to accommodate their disability, such as providing Plaintiffs with a separate theater that is equipped solely for the use of individuals with hearing loss. Plaintiffs are merely entitled to use Defendants' theaters to the same extent as hearing individuals."). Because Franklin Institute does not limit access to its programs, services or performance to any of its patrons who are disabled, nor have Plaintiffs alleged such in their Complaint, it has not discriminated against Plaintiffs by providing them with any unequal benefits[5].

Accordingly, Franklin Institute is not required to provide additional access to Plaintiffs in the form of free admission for any individual accompanying them. Because Plaintiffs have equal

---

[5] Further, Plaintiffs misinterpret and misconstrue the DOJ Appendix C Commentary in their Opposition Memorandum. See Opposition Memorandum at p. 10. As defined in the ADA itself, a public accommodation is a private entity that owns, leases or leases to, or operates a place of public accommodation. See 42 U.S.C. § 12182 (a). The ADA lists twelve categories of private entities that are considered places of public accommodations under Title III. See 42 U.S.C. § 12181 (7). In Appendix C, when the DOJ states that "it is the place of public accommodation and not the place of public accommodation that is subject to the regulations' nondiscrimination requirements," it is merely stating that it is the public accommodation that is subject to liability and not the place of public accommodation. It does not, as Plaintiffs' appear to imply, change Franklin Institute's obligations in any way – Franklin Institute has not contested that it is a public accommodation nor has it claimed that any other entity is responsible for ADA compliance at its facility.

access to the facility, they have not been provided with an unequal benefit and Plaintiffs have failed to state a claim for violation of Title III.

### D. Requiring Every Visitor to Pay Admission Cannot Constitute A Surcharge

A surcharge is a charge imposed "to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures." 28 C.F.R. 36.301(c). "In order to evaluate whether a cost constitutes a surcharge that violates Title III of the ADA, a court considers, *inter alia*, whether it is used to cover the costs of ADA-mandated measures. *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 545 (W.D. Pa. 2013). For this additional reason, the cases cited by Plaintiffs with respect to public entities under Title II charging a fee for placards in order to use handicapped parking spaces, which are specifically required under the ADA, are inapposite. Because Franklin Institute is merely charging its regular admission rates and is not attempting to recover the costs of any ADA mandated requirement here, there is no surcharge being imposed.

## II. CONCLUSION

Accordingly, for the reasons stated herein as well as in Franklin Institute's Memorandum of Law in Support of its Motion to Dismiss, Franklin Institute respectfully requests that this Court dismiss all of Plaintiffs' claims against it with prejudice and award Franklin Institute its reasonable costs and attorneys' fees incurred in defending this action.

Dated: January 8, 2014

Respectfully submitted,

*s/Anne Marie Estevez*
Anne Marie Estevez
Admitted *Pro Hac Vice*
Fla. Bar No. 991694
E-Mail: aestevez@morganlewis.com
Beth S. Joseph
Admitted *Pro Hac Vice*
Fla. Bar No. 0062952
E-Mail: bjoseph@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
200 South Biscayne Boulevard, S-5300
Miami, FL 33131-2339
Tel.: 305.415.3330
Fax: 305.415.3000

Cailin Heilig
(I.D. No. 309894)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19102
Tel: 215.963.5546
Fax: 215.963.5001
E-mail: cheilig@morganlewis.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I, Anne Marie Estevez, hereby certify that a true and correct copy of the foregoing was filed electronically and is available for viewing and downloading from the ECF system of the U.S. District Court for the Eastern District of Pennsylvania, and that I served the same via electronic filing on January 8, 2014 upon the following:

Stephen F. Gold, Esq.
(I.D. No. 09880)
1709 Benjamin Franklin Institute Pkwy
Second Floor
Philadelphia, PA 19103
Tel: 215.627.7100 ext. 227
Fax: 215.627.3183
E-mail: Stevegoldadal@gmail.com

*s/Anne Marie Estevez*
Anne Marie Estevez