**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL ANDERSON; JOEL PACHECO, | ) | |
| by his parents and guardians, ANA and | ) | |
| EMILIO PACHECO and VISION FOR | ) | |
| EQUALITY, a non-profit corporation, | ) | |
| | ) | |
| *Plaintiffs* | ) | Civil Action No. 13-5374 |
| | ) | |
| v. | ) | |
| | ) | |
| THE FRANKLIN INSTITUTE, | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

## DEFENDANT THE FRANKLIN INSTITUTE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. STATEMENT OF UNDISPUTED MATERIAL FACTS .................................. 3

    A.  The Franklin Institute's Admission Policies ......................................... 3

    B.  Plaintiff Anderson's Visits to The Franklin Institute ........................... 6

    C.  Plaintiff VFE Has No Members, and Has Not Suffered a Cognizable
        Injury ...................................................................................................... 8

    D.  The Hearing on The Franklin Institute's Motion to Dismiss ................ 9

III. LEGAL STANDARD ..................................................................................... 10

IV. ARGUMENT .................................................................................................. 10

    A.  VFE Lacks Standing and Must be Dismissed with Prejudice ............ 10

        1.  VFE lacks associational standing because it has no members with
            standing in their own right ..................................................... 11

        2.  VFE lacks organizational standing because it has not suffered an
            injury cognizable under Article III of the Constitution or Title III
            of the ADA .............................................................................. 13

            a.  Article III organizational standing ................................ 13

            b.  Prudential organizational standing ................................ 15

    B.  Plaintiff Anderson Lacks Standing to Seek Free General Admission for his
        PCAs ..................................................................................................... 17

    C.  Alternatively, Plaintiffs' Claims for Free General Admission for PCAs
        Are Moot .............................................................................................. 18

    D.  Plaintiffs' ADA Claims for Free Admission to Limited Capacity Events
        Must Fail .............................................................................................. 20

        1.  The ADA does not require that PCAs receive free admission to
            limited-admission events like the special temporary exhibits and
            IMAX and Franklin Theater showings ................................... 20

        2.  Paid PCAs like those used by Plaintiffs are "companions" under
            the DOJ's guidance on ticketing for limited-admission events .............. 25

        3.  Even if a limited-seating venue is not full, complimentary
            admission for PCAs is not required ....................................... 26

V.  CONCLUSION ................................................................................................ 27

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Access Now, Inc. v. S. Fla. Stadium Corp.*,
161 F. Supp. 2d 1357 (S.D. Fla. 2001) ........................................................................23

*Blanciak v. Allegheny Ludlum Corp.*,
77 F.3d 690 (3d Cir. 1996)............................................................................................19

*Bragdon v. Abbott*,
524 U.S. 624 (1998)......................................................................................................21

*Brown v. Mt. Fuji Japanese Rest.*,
615 F. App'x 757 (3d Cir. 2015) .....................................................................................7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)......................................................................................................10

*Clark v. Burger King Corp.*,
255 F. Supp. 2d 334 (D.N.J. 2003) ..............................................................11, 12, 13, 15

*Clark v. McDonald's Corp.*,
213 F.R.D. 198 (D.N.J. 2003)......................................................................11, 14, 15, 16

*Disabled in Action of Pa. v. Nat'l Passenger R.R. Corp.*,
418 F. Supp. 2d 652 (E.D. Pa. 2005) ...........................................................................24

*Edmonson v. Lincoln Nat'l Life Ins. Co.*,
725 F.3d 406 (3d Cir. 2013)..........................................................................................17

*Goldstein v. Costco Wholesale Corp.*,
278 F. Supp. 2d 766 (E.D. Va. 2003) ...........................................................................15

*Harty v. Burlington Coat Factory of Pa., L.L.C.*,
No. 11-01923, 2011 WL 2415169 (E.D. Pa. June 16, 2011)..................................21

*Indep. Living Res. v. Or. Arena Corp.*,
1 F. Supp. 2d 1159 (D. Or. 1998) ............................................................................23, 27

*J.M. v. Nobel Learning Cmtys., Inc.*,
No. 12-3882, 2013 WL 4833846 (E.D. Pa. Sept. 10, 2013) .................................19

*Kirola v. City & Cnty. of San Francisco*,
74 F. Supp. 3d 1187, 1258-59 (N.D. Cal. 2014)..........................................................20

*Lindamood v. Astrue*,
No. 5:10cv00033, 2011 WL 250318 (W.D. Va. Jan. 26, 2011) ...........................................26

*Louie v. Nat'l Football League*,
185 F. Supp. 2d 1306 (S.D. Fla. 2002) ............................................................................23, 26

*Med. Soc'y of N.J. v. Herr*,
191 F. Supp. 2d 574 (D.N.J. 2002) ........................................................................................19

*Moranos v. Royal Caribbean Cruises, Ltd.*,
565 F. Supp. 2d 1337 (S.D. Fla. 2008) ..................................................................................20

*Nat'l Alliance For Accessibility, Inc. v. McDonald's Corp.*,
No. 8:12-CV-1365, 2013 WL 6408650 (M.D. Fla. Dec. 6, 2013) .........................................19

*Pluck v. Astrue*,
No. 10–CV–02042, 2011 WL 917654 (E.D.N.Y. Mar. 8, 2011.............................................25

*Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*,
123 F.3d 111 (3d Cir. 1997)...................................................................................................11

*Shield Our Constitutional Rights & Justice v. Hicks*,
No. 09–0940, 2009 WL 3747199 (D. Md. Nov. 4, 2009) ......................................................14

*Siebert v. Astrue*,
No. 09–194, 2010 WL 4810705 (W.D. Pa. Nov. 19, 2010) ..................................................25

*Stephens v. Shuttle Assocs., L.L.C.*,
547 F. Supp. 2d 269 (S.D.N.Y. 2008)....................................................................................20

*Stewart v. Weis Markets, Inc.*,
890 F. Supp. 382 (M.D. Pa. 1995) .........................................................................................25

*Wash. Legal Found. v. Leavitt*,
477 F. Supp. 2d 202 (D.D.C. 2007) ..................................................................................11, 12

*Welchly v. First Bank*,
No. 3:13-00440, 2014 WL 2615808 (M.D. Tenn. June 12, 2014) .........................................19

*Zacharkiw v. Prudential Ins. Co. of Am.*,
No. 10-cv-0639, 2012 WL 39870 (E.D. Pa. 2012) ................................................................19

## STATUTES

42 U.S.C. § 12182(b)(1) ...............................................................................................................1

42 U.S.C. § 12182(b)(1)(A)(i)-(ii) ...............................................................................................1

42 U.S.C. § 12182(b)(1)(D)...........................................................................................................1

42 U.S.C. § 12182(b)(2) ...................................................................................................1

42 U.S.C. § 12182(b)(2)(A)(ii) .........................................................................................1

42 U.S.C. § 12186(b) .......................................................................................................21

42 U.S.C. § 12188(a)(1) ...................................................................................................16

ADA ............................................................................................................................ passim

Title III of the Americans with Disabilities Act .................................................. passim

**OTHER AUTHORITIES**

28 C.F.R. § 36.213 .............................................................................................................1

28 C.F.R. § 36.303(c)(1)(i) ..............................................................................................25

28 C.F.R. § 36.306 .......................................................................................................23, 24

*Disability*, HENRY J. KAISER FAMILY FOUND., http://kff.org/other/state-
    indicator/disability-prevalence/.................................................................................2

FED. R. CIV. P. 56(a) ........................................................................................................10

FED. R. EVID. 201(b)(2) .....................................................................................................2

Federal Rule of Civil Procedure 56 ...........................................................................3, 10

*State & County QuickFacts: Pennsylvania*, U.S. CENSUS BUREAU (Oct. 14, 2015),
    http://quickfacts.census.gov/qfd/states/42000.html ..............................................2

U.S. D.O.J. Civil Rights Div., *Ticket Sales* at 1 (July 2011), *available at*
    http://www.ada.gov/ticketing_2010.pdf ..........................................................21, 22

U.S. D.O.J. Civil Rights Div., *Ticket Sales* at 4 (July 2011), *available at*
    http://www.ada.gov/ticketing_2010.pdf ...................................................................26

Article III of the United States Constitution ..................................................... passim

Defendant THE FRANKLIN INSTITUTE respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment.

## I.  **INTRODUCTION**

In three separate counts litigated over the last two and half years, months of extensive written and oral discovery, including multiple depositions, 81 requests for admissions and 34 requests for production, Plaintiffs have failed to provide any admissible evidence or applicable law to support their claims that The Franklin Institute, a not-for-profit, educational science museum, violated Title III of the Americans with Disabilities Act ("ADA") by requiring them to purchase tickets for their personal care attendants ("PCAs")[1] when visiting the museum, either for general admission or to see limited-capacity special exhibits and IMAX and Franklin Theater cinematic presentations.[2]

Moreover, neither Plaintiff has standing to challenge the Franklin Institute's policies related to free general admission for PCAs; Plaintiff Vision for Equality ("VFE") lacks standing to bring any claims in this matter whatsoever.  Plaintiff Anderson's PCAs have never been

---

[1]  For convenience, The Franklin Institute will use the term "PCA," the term Plaintiffs have adopted, for individuals who provide personal assistance services to individuals with disabilities who are receiving governmental assistance through the Pennsylvania Department of Human Services (formerly the Pennsylvania Department of Public Welfare).  Attendant Care/Act 150, PA. DEP'T OF HUMAN SERVS., http://www.dhs.pa.gov/citizens/attendantcare/attendantcareact150/#.Vky4IXarSUk . The Franklin Institute is not aware of any official definition of this term.

[2]  Though Plaintiffs have three separate remaining counts in their Complaint, the claims set forth therein are redundant, and subject to the same analysis.  Title III first sets forth "[g]eneral prohibition[s]," *see* 42 U.S.C. § 12182(b)(1), and then "[s]pecific prohibitions," *see* 42 U.S.C. § 12182(b)(2).  Counts I and III of the Complaint are based on the general prohibitions against denying equal opportunity based on disability, *see* 42 U.S.C. § 12182(b)(1)(A)(i)-(ii), and "utiliz[ing] standards or criteria or methods of administration" that have a discriminatory effect, 42 U.S.C. § 12182(b)(1)(D).  Count II is based on the specific prohibition against "fail[ing] to make reasonable modifications in policies, practices, or procedures."  42 U.S.C. § 12182(b)(2)(A)(ii).  As the regulations explain, "The specific provisions, including the limitations on those provisions, control over the general provisions in circumstances where both specific and general provisions apply."  28 C.F.R. § 36.213.  The Complaint challenges one policy—charging admission to all patrons visiting The Franklin Institute.  The Franklin Institute's substantive arguments—that its policies do not violate the ADA because 1) PCAs are provided with free general admission to the museum, and 2) the Department of Justice's ("DOJ") guidance on ticket sales does not require that companions, including PCAs, receive free admission to limited-capacity events—applies equally to each count of the Complaint.  A policy that the DOJ allows does not violate the ADA—either its general or specific prohibitions.

denied free general admission to the Franklin Institute, and thus, he has not suffered any injury sufficient to allow him to bring the instant claims.  Additionally, as an advocacy group, VFE must have either associational standing to sue on behalf of its *members* who have standing themselves, or organizational standing to sue on its own behalf.  VFE cannot satisfy the test for associational standing because it has no members, and it has not identified any individuals who obtain services from it who have standing.  Furthermore, VFE lacks organizational standing because it has not suffered an injury cognizable under Article III of the Constitution or Title III of the ADA.  It lacks prudential standing under Title III of the ADA because it has not itself been discriminated against, and is not about to be discriminated against.

Even if standing did exist here, which it does not, Plaintiffs' allegations related to the general admission policy, which is already in place and allows free general admission to a PCA who is accompanying individuals with severe disabilities, must be dismissed as moot. Additionally, the Franklin Institute has also taken steps to re-emphasize its policy of free general admission for PCAs, including additional training and formalizing of its policy. Accordingly, as Plaintiffs currently have the relief they seek, their claims for free general admission for PCAs are moot and must be dismissed with prejudice on this independent and separate basis as well.

Next, Plaintiffs demand that individuals with disabilities who use attendants receive free admission to special temporary exhibits and for IMAX and Franklin Theater showings for which members and visitors must pay an additional fee—this includes the at least 1,700,000 individuals with disabilities in Pennsylvania,[3] an unknown number of whom would attempt to avail themselves of free admission to limited-seating special exhibits and the theaters at The Franklin

---

[3] The population of Pennsylvania in 2014 was 12,787,209.  *State & County QuickFacts: Pennsylvania*, U.S. CENSUS BUREAU (Oct. 14, 2015), http://quickfacts.census.gov/qfd/states/42000.html.  In 2012, 13.5% of Pennsylvanians reported a disability.  *State Health Facts: Percentage of Population Who Reported a Disability*, HENRY J. KAISER FAMILY FOUND., http://kff.org/other/state-indicator/disability-prevalence/ (last visited Dec. 1, 2015) (citing study using American Community Survey data).  *See also* FED. R. EVID. 201(b)(2).

Institute.  However, because these special temporary exhibits and IMAX and Franklin Theater showings are limited-capacity events, for each showing, there is only a finite number of admissions available.  Nothing in the ADA itself, its controlling regulations, or the DOJ's guidance on ticket sales requires public accommodations to grant disabled patrons' companions, such as PCAs, such free admission.  Accordingly, The Franklin Institute's policy of requiring paid admission for PCAs (like all patrons) to attend special temporary exhibits and IMAX and Franklin Theater showings does not violate Title III of the ADA in any way.

Indeed, in the hearing on The Franklin Institute's Motion to Dismiss, Plaintiffs conceded that, at least when an event is full, disabled patrons must pay an attendant's admission price.  But neither the DOJ guidance nor the case law distinguishes between situations in which tickets are sold out and those in which tickets are still available.

Accordingly, as a matter of law, Plaintiffs are not entitled to free admission for their PCAs to The Franklin Institute's special temporary exhibits and IMAX and Franklin Theater showings under any circumstances, and under Federal Rule of Civil Procedure 56, The Franklin Institute respectfully requests this Court to enter summary judgment in its favor on Plaintiffs' remaining claims.[4]

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS[5]

### A.     The Franklin Institute's Admission Policies

1.     The Franklin Institute's policy is, and has been since before the beginning of this Action, to allow individuals with severe disabilities, such that they require personal assistive services, including from a personal care attendant or "PCA," provided or paid for by a public

---

[4] Plaintiffs withdrew Count IV of their Complaint on the record in open court on September 23, 2014.  DE 22.  In addition, Plaintiff Joel Pacheco voluntarily dismissed his claims with prejudice on October 28, 2015.  DE 51.

[5] The Franklin Institute accepts as true and accurate this Statement of Undisputed Material Facts solely for purposes of this case-dispositive motion.  The Franklin Institute does not concede its right to dispute these statements should this case proceed to trial.

agency such as the Pennsylvania Department of Human Services (formerly the Pennsylvania Department of Public Welfare), to visit the museum without a charge for the general admission of one PCA accompanying the disabled patron when 1) a general admission ticket is purchased by or for the disabled patron; 2) the disabled patron uses a current Franklin Institute membership to enter the museum; or 3) the disabled patron has a complimentary admission. *Attendant Care/Act 150*, PA. DEP'T OF HUMAN SERVS.,

http://www.dhs.pa.gov/citizens/attendantcare/attendantcareact150/#.Vky4IXarSUk (last visited Nov. 18, 2015); Declaration of Larry Dubinski, ¶ 3, attached as Exhibit 1; Declaration of Troy Collins, ¶ 4, attached as Exhibit 2.

2.     The Franklin Institute has directed, through all departments, that the policy of free general admission for personal assistants for individuals with disabilities be emphasized repeatedly, and The Franklin Institute has posted copies of the policy and included the policy in its training program.  Collins Dep. 274:11-18, 276:15-20, 280:1-5, relevant excerpts attached as Exhibit 3; *see also* Collins Decl. ¶ 5, Ex. A at FI001635 - FI001639 (photographs of posted copies of the policy).

3.     General admission at The Franklin Institute includes admission to the museum and the Fels Planetarium.  Collins Decl. ¶ 6.  At times, certain special temporary exhibits will also be included as part of the general admission ticket, like CIRCUS! Science under the Big Top and 101 Inventions that Changed the World.  Collins Dep. 217:16-20.

4.     General admission does not include admission to special temporary exhibits for which visitors must pay an additional fee.  Collins Decl. ¶ 7.

5.     For each special temporary exhibit, The Franklin Institute enters into contractual agreements with various partners such as CBS Consumer Properties, Premier Exhibitions and the

Israel Antiquities Authority, and these agreements bind The Franklin Institute and require that The Franklin Institute pay fees and costs related to the special exhibit.  *Id.* ¶ 8.  The Franklin Institute also incurs significant costs and expenses to bring in special exhibits and must charge a fee for entry in order to attempt to recoup these costs.  A recent special exhibit, Vatican Splendors, cost The Franklin Institute $1,800,000.  *Id.* ¶ 9.  These costs come from building and installing the exhibit, striking or taking down the exhibit, marketing and advertising, shipping and transportation, fees and guarantees to exhibition producing partner, extra cashiers, ticket takers and customer service personnel, technicians, security, janitorial costs and other operational costs.  *Id.*  As a non-profit institution, The Franklin Institute attempts to avoid running a deficit, which would also make it ineligible for certain grants and charitable donations.  *Id.* ¶ 10. Additionally, any deficit must be covered by cash that might not be available.  *Id.*  Combined, this means that if The Franklin Institute does not at least break even on the special exhibits, costs must be cut from other areas in the budget such as a decrease in educational programming, staff layoffs, or eliminating services provided by The Franklin Institute to the community such as free admission for Title I schools and/or free community nights for underserved neighborhoods.  *Id.*

6.      To gain access to a special exhibit for which an additional fee is charged, a museum guest must purchase a ticket allowing entry at a specific date and time. *Id.* ¶ 11.  Once the pre-set number of tickets for that timeslot is sold, no additional tickets may be purchased for that timeslot, as it will be "sold out."  *Id.*

7.      If The Franklin Institute gives away a ticket to a special exhibit for free, it will lose a sale for that timeslot.  *Id.* ¶ 12.

8.      General admission also does not apply to IMAX and Franklin Theater showings, as these are also limited-admission/limited-seating events, which, like special exhibitions, carry a

unique set of incremental costs. *Id.* ¶ 13.  There are only 353 fixed seats in The Franklin Institute's IMAX Theater. Def.s' Resps. & Objections to Pls.' Third Set of Requests for Admissions at 3, attached as Exhibit 4.  There are only 266 fixed seats in the Franklin Theater. Collins Decl. ¶ 14.

9.     The Franklin Institute also must pay fees and costs to the appropriate film studios or distributors for the films screened in the IMAX Theater and Franklin Theater.  Collins Dep. 69:8-11.  These generally include a cost to be paid for each ticket sold or used.  Collins Decl. ¶ 15; Collins Dep. 87:24-88:4, 103:23-104:14.  It can also be based on a percentage of gross revenue that may fluctuate from week-to-week or some hybrid of these two formulas, i.e., $3.00 per ticket or 40% of the gross revenue per week, whichever is greater.  Collins Decl. ¶ 15.

10.     The Franklin Institute does not, as a policy, provide free admission to companions or PCAs for IMAX and Franklin Theater showings or special exhibits that require the purchase of a separate ticket.  *Id.* ¶ 16.

11.     Individuals who provide personal care services do not receive any official identification cards and are not required to wear special uniforms.  Collins Dep. 216:14-17, 217:11-15; Ana Pacheco Dep. 25:7-11, relevant excerpts attached as Exhibit 5.

12.     There are no special qualifications needed to provide personal care services aside from the training all PCAs receive upon hire.  A. Pacheco Dep. 25:17-20.  Anyone, including immediate family members, can provide paid personal care services.  *Id.* 23:9-12.

**B.     Plaintiff Anderson's Visits to The Franklin Institute.**

13.     Plaintiff Michael Anderson uses personal care assistance services provided by the Pennsylvania Department of Human Services ("DHS").  Anderson Decl. ¶ 2, attached as Exhibit 6.

14.     In 2009, Anderson bought an individual membership to The Franklin Institute. *Id.* ¶ 4.  Anderson visited The Franklin Institute twice during the effective period of his membership—on May 20, 2009 and November 2, 2009.  *Id.*  During these visits he was accompanied only by his PCA.  *Id.*  Both times, the PCA received free general admission.  *Id.*

15.     Anderson bought a dual membership in 2013.  *Id.* ¶ 5.  In 2013, Anderson did not pay for the general admission of his PCAs to The Franklin Institute.  *Id.*

16.     In 2013, Anderson complained to The Franklin Institute that he had to pay for the admission of his PCA to a special exhibit and a movie.  *Id.* ¶ 6.  As a courtesy to a member who was dissatisfied, The Franklin Institute accommodated Anderson by giving him a $13.50 refund for one of the upgraded ticket purchases to a showing of the *Meerkats* movie, as well as admission to the special exhibit, Spy, that Anderson and his PCA had attended on May 22, 2013. *Id.*  The Franklin Institute also provided two courtesy tickets to Anderson to the Spy Exhibit on July 17, 2013, in further response to this complaint.  *Id.*  Nevertheless, Anderson decided he no longer wanted a membership to The Franklin Institute.  *Id.*  On July 24, 2013, Kelli M. Buchan, The Franklin Institute's Director of Membership and Group Sales, notified Anderson that he was receiving a full refund of his membership payment pursuant to his father's request.  *Id.*  The Franklin Institute refunded Anderson's membership in full.  *Id.*

17.     On December 31, 2014, Anderson was given free general admission for his PCA, Solar McCoy.[6]  *Id.* ¶ 7.

---

[6] In his Declaration, Plaintiff Anderson claims that he was told by the ticket-taker on December 31, 2014, that on his next visit (which has not occurred to Franklin Institute's knowledge), he would have to pay a reduced admission price for his attendant's general admission.  Anderson Decl. ¶ 7.  As this has never been the policy of the Franklin Institute, this statement is inexplicable; however, it cannot save Plaintiff Anderson's claims as standing is measured as of the time the Complaint was filed.  *See Brown v. Mt. Fuji Japanese Rest.*, 615 F. App'x 757, 758 (3d Cir. 2015) (holding that plaintiff asserting Title III claim lacked standing even though she alleged that she visited the place of public accommodation twice since her first visit, as "these post-complaint trips do not help her because standing is assessed at the time she filed the complaint").  The Complaint in this matter was filed on September 16, 2013. DE 1.

18.     Neither Anderson nor anyone on his behalf has had to purchase a separate general admission ticket for one of Anderson's PCAs when visiting The Franklin Institute. *Id.* ¶ 8.

19.     No one at The Franklin Institute ever orally told Anderson that a dual membership was needed for his PCA to receive free general admission to the museum. *Id.*

**C.     Plaintiff VFE Has No Members, and Has Not Suffered a Cognizable Injury.**

20.     VFE does not have members, membership cards, or membership lists.  Coccia Dep. 125:20-24, 21:14-17, 21:18-24, 22:16-21, relevant excerpts attached as Exhibit 7.

21.     Individuals who obtain services from VFE "don't vote"—they do not elect the leadership of VFE. *Id.* at 29:5, 119:11-16.

22.     Individuals who obtain services from VFE "are not obligated to do anything," and have no required duties or fees. *Id.* at 29:3-5, 30:24-31:3, 29:2-3, 15:9-12.

23.     There is no requirement for any individuals to give money to VFE. *Id.* at 123:23-124:2.  VFE funding does not come from donations but rather from local and state government. *Id.* at 38:21-39:6, 124:3-6.

24.     VFE "maintain[s] no records of visits to the Franklin Institute by our consumers." Pl. Vision for Equality's Resp. Def. The Franklin Institute's First Set of Interrogatories at 5, attached as Exhibit 8.

25.     VFE does not know how many VFE consumers have visited The Franklin Institute.  Coccia Dep. 76:24-77:4.

26.     The Franklin Institute's admission policies have not prevented VFE from raising revenues. *Id.* at 66:23-67:2.

27.     VFE's "purpose is to provide equal access to support[] and services for people with intellectual and developmental disabilities so they can participate in community activities and so they are not discriminated against."  Compl. ¶ 42, DE 1.

28.     The Franklin Institute's admission policies have not prevented VFE from providing services to anyone.  Coccia Dep. 68:1-4.

29.     VFE has not lost a contract or grants because of this litigation.  *Id.* at 132:15-21, 40:8-10.  Similarly, VFE has never received a grant or a contract conditioned upon a directive to pursue The Franklin Institute for its admission policies.  *Id.* at 72:21-73:10.

30.     VFE has not been said to fail to comply with a contract or grant because it is not pursuing lawsuits against institutions for their admission policies.  *Id.* at 170:9-14.

31.     No one has approached VFE and said he was disappointed or upset or thought less of VFE because of The Franklin Institute's admission policies.  *Id.* at 70:15-22.

32.     VFE has never paid for anyone to attend The Franklin Institute on behalf of VFE; has never purchased a ticket to a special exhibit at The Franklin Institute, and has never purchased a ticket to an IMAX movie or any movie at The Franklin Institute because "[t]hat's not part of the work that we do." *Id.* at 31:12-15, 32:19-22, 32:2-8.

33.     VFE itself has charged a separate admission fee of $30 apiece for PCAs when hosting an event at a Harlem Globetrotters Show at the Wells Fargo Center in Philadelphia in March 2015.  *Id.* at 80:1-10, 80:21-81:1, 81:2-82:17; Coccia Dep. Ex. 3.

**D.      The Hearing on The Franklin Institute's Motion to Dismiss.**

34.     On November 22, 2013, The Franklin Institute moved to dismiss Plaintiffs' Complaint, including on the ground that public accommodations are not required to provide free admission to paid companions under the ADA.  DE 12 at 8-9.

35.     During the hearing on The Franklin Institute's Motion to Dismiss, both Plaintiffs' counsel and the Court drew distinctions between general admission to museums like The Franklin Institute and admission to limited-seating venues like theaters, stating that the DOJ's

guidance on ticket sales, which does not require free admission to companions such as PCAs, applied to the latter.

36.     Plaintiffs' counsel stated that "selling tickets for assigned seats" is "the only thing this [the DOJ's guidance] applies to."  Tr. of Hr'g on Mot. to Dismiss at 24:12-14, attached as Exhibit 9.  Plaintiffs' counsel acknowledged that "IMAX in the context of the Franklin Institute is a theater with fixed seating," and that, at least when the IMAX is full, a disabled person who is accompanied by a PCA is "going to have to probably pay even for an attendant."  *Id.* at 25:2-3, 30:21-24, 32:12.

37.     During the hearing, the Court stated that the DOJ's guidance on ticket sales "deals with a limited seating venue.  In other words, we've got a theater or we've got a stadium and there's a finite number of seats."  *Id.* at 7:4-12.  The Court further stated that the cases on ticketing have concerned "finite venue[s] . . . where if an institution were to give up a seat they couldn't sell it."  *Id.* at 8:25-9:1.

## III.     <u>LEGAL STANDARD</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV.     <u>ARGUMENT</u>

### A.     <u>VFE Lacks Standing and Must be Dismissed with Prejudice.</u>

To pursue a claim under Title III of the ADA, an advocacy group like VFE must have (1) "associational standing" to sue "on behalf of its members" who "would otherwise have

standing to sue in their own right," or (2) "organizational standing" "to sue on its own behalf." *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 207 (D.N.J. 2003).  VFE does not have members who would have standing to sue in their own right, and has not suffered an injury cognizable under Article III of the Constitution or Title III of the ADA.  Accordingly, VFE lacks standing, and its claims must be dismissed for lack of subject matter jurisdiction.

      **1.**      <u>**VFE lacks associational standing because it has no members with standing in their own right.**</u>

An advocacy group must meet the following elements to have associational standing: "(a) its *members would otherwise have standing to sue in their own right*; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members in the lawsuit."  *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 345 (D.N.J. 2003) (emphasis added).  VFE cannot satisfy the first element because it has no members, and the individuals whom it serves lack standing in their own right.

As an initial matter, VFE does not have any members, formal or informal.  VFE's 30(b)(6) witness, Audrey Coccia, admitted that VFE does not have members.  Coccia Dep. 125:20-2.  For organizations without members to have associational standing, the individuals associated with them must have "the 'indicia of membership' in their organizations."  *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 119 (3d Cir. 1997) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 344 (1977)).  An organization "must represent individuals that have ***all*** the 'indicia of membership' including (i) electing the entity's leadership, (ii) serving in the entity, and (iii) financing the entity's activities."  *Wash. Legal Found. v. Leavitt*, 477 F. Supp. 2d 202, 208 (D.D.C. 2007) (emphasis added).

Individuals who obtain services from VFE do not satisfy *any* of these prerequisites.  First, individuals who obtain services from VFE "don't vote"- and do not elect VFE's leadership. Coccia Dep. 29:5, 119:11-16.  Second, individuals who obtain services from VFE are not required to serve in VFE: they "are not obligated to do anything.  They can participate or not." *Id.* 29:3-5.  Third, individuals who obtain services from VFE are not required to finance VFE's activities, whether in the form of dues, fees, or otherwise.  *See id.* 15:9-12, 29:2-3, 123:23-124:2.  Rather, VFE gets most of its funding from local and state government, *see id.* 38:21-39:6, and not from donations, *see id.* 124:3-6.  Moreover, VFE does not have membership cards or a membership list.  *See id.* 21:14-24, 22:16-21; *see also Wash. Legal Found.*, 477 F. Supp. 2d at 209 n.5 (finding that organization did not have associational standing because the indicia of membership were not present, and also stating that the organization's "members" "do not receive a membership card").[7]

Second, even if individuals whom VFE serves had all the indicia of membership, they do not have standing to sue in their own right.  For an organization to have associational standing to sue on behalf of its members, it must identify the members who visited the place of public accommodation and plan to return there.  *See Clark v. Burger King Corp.*, 255 F. Supp. 2d at 345 (finding that organization "[did] not have standing to assert ADA violations on behalf of its members, other than" the named plaintiff, because it "fail[ed] to identify which members visited which restaurants on which dates and when such members plan to return to these Burger King restaurants").

---

[7] The *Washington Legal Foundation* court also concluded that for purposes of determining whether individuals have indicia of membership, it does not matter whether the individuals were on an organization's mailing list, whether individuals were "work[ing] with [the organization] in achieving common goals," or "whether the individuals view themselves as members of the organization and whether they are viewed by the organization as members."  *Wash. Legal Found.*, 477 F. Supp. 2d at 210.  Therefore, even if these factors are present here, they do not establish membership.

Here, VFE has not identified which individuals visited The Franklin Institute on which dates, and when they plan to return to The Franklin Institute.  In fact, VFE "maintain[s] no records of visits to the Franklin Institute by our consumers."  Pl. Vision for Equality's Resp. Def. The Franklin Institute's First Set of Interrogatories at 5.  VFE does not know how many VFE consumers have visited The Franklin Institute.  *See* Coccia Dep. 76:24-77:4.  Accordingly, VFE lacks associational standing.

> **2.** **VFE lacks organizational standing because it has not suffered an injury cognizable under Article III of the Constitution or Title III of the ADA.**

> **a.** **Article III organizational standing.**

Under Article III of the Constitution, "[t]o possess standing to sue in its own right, [an organization] must allege a personal stake in the outcome of an otherwise justiciable controversy."  *Clark v. Burger King Corp.*, 255 F. Supp. 2d at 344 (quotation marks omitted).  "An organization does not possess standing simply because it has an ideological or abstract social interest that is adversely affected by the challenged action."  *Id.* (quotation marks omitted).  "However, an organization has standing to challenge conduct that impedes its ability to attract members, to raise revenues, or to fulfill its purposes."  *Id.* (quotation marks and ellipses omitted).

The Franklin Institute's admission policies have not impeded VFE from attracting members, which as shown above, it does not have.  Nor have The Franklin Institute's admission policies prevented VFE from raising revenues.  *See* Coccia Dep. 66:23-67:2.  Furthermore, The Franklin Institute's admission policies have not prevented VFE from fulfilling its purposes. In fact, The Franklin Institute's admission policies have not prevented VFE from providing services to anyone.  Coccia Dep. 68:1-4.

None of the injuries alleged by VFE constitute a frustration of mission that could confer standing on VFE.[8]  VFE's 30(b)(6) witness stated that it costs "time and effort," such as her appearance for her deposition, to advocate for rights.  Coccia Dep. 63:21-64:4.  But there are no "specific facts" showing that VFE had to divert resources from other endeavors to address The Franklin Institute's alleged discrimination.  *Shield Our Constitutional Rights & Justice v. Hicks*, No. 09–0940, 2009 WL 3747199, at *5 (D. Md. Nov. 4, 2009) (holding that plaintiffs lacked organizational standing where they "appear[ed] to allege that [the organization] suffered injury as a result of having to divert its resources from other programs in order to assist" an individual plaintiff).  Moreover, an organization "must allege something more than litigation expense to establish an injury for constitutional purposes" because "were the rule otherwise, any litigant could create injury in fact by bringing a case, and Article III would present no real limitation." *Clark v. McDonald's Corp.*, 213 F.R.D. at 208 (quotation and brackets omitted).

Although Coccia claimed that VFE could lose funding for not doing enough for the disabled, Coccia Dep. 40:14-19, 132:3-14, 159:23-160:10, her fears are purely speculative and unsubstantiated.  VFE has not lost any contracts because of this litigation nor has VFE lost contracts or grants for failing to pursue any institutions for their admission policies.  *Id.* 40:8-10, 170:9-20, 171:5-11, 132:15-21.  VFE has never received a grant or a contract conditioned upon a directive to pursue The Franklin Institute for its admission policies.  *See id.* 72:21-73:10.  VFE has not been said to fail to comply with a contract or grant because it is not pursuing lawsuits against institutions for their admission policies.  *See id.* 170:9-14.

---

[8] VFE's position that charging for admission of PCAs constitutes a frustration of its mission is disingenuous, given the fact that on March 8, 2015, VFE hosted a fundraiser in conjunction with the Harlem Globetrotters, which PCAs were charged the ticket price to attend.  Coccia Dep. 81:7-82:17.

In a futile effort to create standing where such does not exist, Coccia testified that The Franklin Institute's admission policies undercut VFE's mission because its policies are allegedly discriminatory.[9]  However, "[a]n organization does not possess standing simply because it has an ideological or abstract social interest that is adversely affected by the challenged action."  *Clark v. Burger King Corp.*, 255 F. Supp. 2d at 344; *see also Goldstein v. Costco Wholesale Corp.*, 278 F. Supp. 2d 766, 769-70 (E.D. Va. 2003) (stating that to have "standing to sue in its own right," an organization must have "suffered a 'concrete and demonstrable injury to the organization's activities—with [a] consequent drain on the organization's resources—constitut[ing] . . . more than simply a setback to the organization's abstract social interests.'") (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).  Therefore, "a conflict between a defendant's conduct and [the] organization's mission is alone insufficient to establish Article III standing."  *Goldstein*, 278 F. Supp. 2d at 770.  In other words, the alleged discrimination by The Franklin Institute does not constitute a frustration of VFE's mission to combat discrimination.  Instead, there must be a frustration of VFE's *ability* to combat alleged discrimination for VFE to have standing, which simply does not exist here.

### b.       Prudential organizational standing.

Even if there is Article III standing, which does not exist here, a claim may be dismissed for lack of prudential standing.  *See Clark v. McDonald's Corp.*, 213 F.R.D. at 206.  VFE lacks

---

[9] *See, e.g.*, Coccia Dep. 127:21-128:11 (stating that The Franklin Institute's policy "doesn't show that we value her [disabled daughter] as much as a member of the community"), 129:16-130:18 (stating that disabled people and PCAs do not have enough money to pay for admission), 131:1-8 (stating that VFE's mission is undercut because "I think all of it is that we believe people should have full access to community under the ADA.  They shouldn't be discriminated against because they have physical or intellectual disabilities and they require more assistance than you or me."), 136:23-137:4 (stating that The Franklin Institute's policy affects VFE's reason for being with regard to integration of the disabled because "it's unequal treatment").

prudential standing under Title III of the ADA because it cannot maintain a claim for discrimination against The Franklin Institute.

Title III's enforcement section states that it "provides" "remedies and procedures . . . to any person *who is being subjected to discrimination* on the basis of disability in violation of this subchapter *or who has reasonable grounds for believing that such person is about to be subjected to discrimination* in violation of section 12183 of this title."  42 U.S.C. § 12188(a)(1) (emphases added).

The plain text of § 12188(a)(1) states that to obtain remedies under Title III, *the plaintiff suing for relief* must *itself* either be subjected to discrimination, or have reasonable grounds for believing that it is about to be subjected to discrimination.  Thus, in *Clark v. McDonald's Corp.*, 213 F.R.D. at 208, the defendants argued that the plaintiff-advocacy group lacked standing to bring a Title III claim because "the language of the private enforcement provision of Title III only confers a cause of action upon a 'person who is being subjected to discrimination.'"  The court found this "persuasive," and held that the language in Title III conferring a private right of action "upon 'any person who i*s being subjected to discrimination* on the basis of disability . . . or who has reasonable grounds for believing that such person *is about to be subjected to discrimination*' . . . erects a prudential barrier precluding organizational standing."  *Id.* at 208-09 (quoting 42 U.S.C. § 12188(a)(1)).  The court stated that the advocacy group "has suffered or is suffering 'frustration of mission' injuries as a result of the Defendants' discrimination *against others*, for which the ADA provides it no remedy."  *Id.* at 209.

Here, VFE has not been subjected to discrimination and is not about to be subjected to discrimination.  VFE has never paid for anyone to attend The Franklin Institute on behalf of VFE.  *See* Coccia Dep. 31:12-15.  VFE has never purchased a ticket to a special exhibit at The

Franklin Institute. *See id.* 32:19-22. And VFE has never purchased a ticket to an IMAX movie or any movie at The Franklin Institute because "[t]hat's not part of the work that we do." *Id.* 32:2-8. VFE has not been able to explain how The Franklin Institute is allegedly discriminating against VFE itself, and instead has merely stated that *others* are allegedly discriminated against. *See id.* 41:24-42:9 (stating that "[i]f you discriminate against one person with a disability . . . you discriminate against all *people with disabilities* that are part of, in any way or shape or form of Vision for Equality") (emphases added). Accordingly, VFE lacks prudential standing under Title III of the ADA, and its claims must be dismissed with prejudice in their entirety.

    **B.**     <u>**Plaintiff Anderson Lacks Standing to Seek Free General Admission for his PCAs.**</u>

"Article III of the United States Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 414 (3d Cir. 2013) (quotation marks omitted). "The irreducible constitutional minimum of standing contains three elements." *Id.* at 415 (quotation marks and brackets omitted). "First, the plaintiff must suffer an injury-in-fact that is concrete and particularized and actual or imminent, as opposed to conjectural or hypothetical." *Id.* "Second, there must be a causal connection between the injury and the conduct complained of." *Id.* (quotation marks omitted). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (quotation marks omitted).

Plaintiff Anderson lacks standing to seek free general admission for those who provide personal care assistance to him because consistent with its pre-existing policy, The Franklin Institute has never charged for general admission to the museum for any of Plaintiff Anderson's PCAs, and therefore he has not suffered an injury-in-fact in this context. The Franklin Institute's policy is, and has been, to allow individuals with severe disabilities, such that they

require personal assistance services, to visit the museum without a charge for the general admission of one PCA accompanying the disabled patron. This policy has been in place since before the beginning of this case. Dubinski Decl. ¶ 3.

The Franklin Institute has applied this policy to Anderson. Anderson himself states that neither he nor anyone on his behalf has had to purchase a separate general admission ticket for one of his PCAs when visiting The Franklin Institute. Anderson Decl. ¶ 8. Indeed, Anderson's PCAs received free general admission on both of his visits under his individual membership in 2009, *id.* ¶ 4; on his visits under his dual membership in 2013, *id.* ¶ 5; and on his visit on December 31, 2014, *id.* ¶ 7. Moreover, no one at The Franklin Institute ever told Anderson that a dual membership was needed for his PCA to receive free general admission. *Id.* ¶ 8. Accordingly, Anderson lacks standing to seek free general admission for his PCAs, and his claim for free general admission for his PCAs must be dismissed for lack of subject matter jurisdiction.

## C. Alternatively, Plaintiffs' Claims for Free General Admission for PCAs Are Moot.

Alternatively, if either Plaintiff has standing to challenge The Franklin Institute's general admission policy and even if The Franklin Institute did not have an effective policy of free general admission for PCAs at the time this case commenced—which The Franklin Institute denies—Plaintiffs Anderson's and VFE's claims for free general admission would be moot because Plaintiffs have already obtained the relief they seek, as The Franklin Institute has taken additional steps to reinforce its policy of free general admission for those providing personal care assistance.

"If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested

relief, the case must be dismissed as moot." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996); *see also J.M. v. Nobel Learning Cmtys., Inc.*, No. 12-3882, 2013 WL 4833846, at *6 (E.D. Pa. Sept. 10, 2013) ("Article III requires that a plaintiff's claim be live not just when he first brings the suit, but throughout the entire litigation, and once the controversy ceases to exist the court must dismiss the case for lack of jurisdiction." (*quoting Walter v. Se. Pa. Transp. Auth.*, No. 05-418, 2007 WL 966227, at *4 (E.D. Pa. Mar. 28, 2007))); *Zacharkiw v. Prudential Ins. Co. of Am.*, No. 10-cv-0639, 2012 WL 39870, at *2 (E.D. Pa. 2012) ("Importantly, a court has no subject matter jurisdiction over a controversy that has become moot."). Thus, "[i]t is the law of the Third Circuit that when a defendant agrees to provide all the prospective injunctive relief sought by a plaintiff, his claim for that relief may be dismissed as moot." *Med. Soc'y of N.J. v. Herr*, 191 F. Supp. 2d 574, 581 (D.N.J. 2002).

An ADA accessibility claim can be moot where, as here, the plaintiffs demand reasonable modifications to policies, practices, or procedures, and the defendant has already modified its policies, practices, or procedures. *See Welchly v. First Bank*, No. 3:13-00440, 2014 WL 2615808, at *7 (M.D. Tenn. June 12, 2014) (dismissing case as moot because defendant had remedied all alleged ADA violations involving its ATMs, including by implementing "a written policy" of inspecting ATMs "regarding ADA compliance"); *Nat'l Alliance For Accessibility, Inc. v. McDonald's Corp.*, No. 8:12-CV-1365, 2013 WL 6408650, at *8 (M.D. Fla. Dec. 6, 2013) (stating that plaintiffs' claims for readily achievable alterations and "modifications in policies, practices and procedures" "may have become moot" if defendants had in the meantime come into full compliance with the ADA).

Here, Plaintiffs seek to require The Franklin Institute to implement policies, practices, or procedures to allow free general admission to their PCAs. However, with respect to these

general admission claims, The Franklin Institute has already provided Plaintiffs with exactly what they seek: an established policy that disabled patrons' care assistants receive free general admission.  *See* Dubinski Decl. ¶ 3.

Moreover, since this case commenced, The Franklin Institute has taken additional steps to implement its policy of free general admission for PCAs.  The Franklin Institute has directed, through all departments, that this policy be re-emphasized, and The Franklin Institute has posted copies of the policy and included the policy in its training program to remind staff of this benefit.  Collins Dep. 280:1-5; *see also* Collins Decl. ¶ 5, Ex. 1 at FI001635 - FI001639 (photographs of posted copies of the policy).  As further shown by the free general admission received by Plaintiff Anderson's PCAs, both before and after the commencement of this litigation, Anderson Decl. ¶¶ 7, 8, The Franklin Institute's policy of free general admission for PCAs is well-established and firmly in place.[10]  Accordingly, Plaintiffs' claims for free general admission are moot, and must be dismissed for lack of subject matter jurisdiction.

**D.** **Plaintiffs' ADA Claims for Free Admission to Limited Capacity Events Must Fail.**

**1.** **The ADA does not require that PCAs receive free admission to limited-admission events like the special temporary exhibits and IMAX and Franklin Theater showings**

---

[10] Even if there were isolated instances when disabled patrons' PCAs did not receive free general admission, Plaintiffs' claims would still fail.  Isolated instances when employees do not follow an ADA-compliant policy do not demonstrate that the policy is deficient, or make the defendant liable under the ADA.  *See, e.g.*, *Kirola v. City & Cnty. of San Francisco*, 74 F. Supp. 3d 1187, 1258-59 (N.D. Cal. 2014) (holding that defendant did not violate the ADA because "the few isolated departures from ADAAG's dimensional requirements in newly constructed and renovated facilities . . . do not establish any systemic deficiency in the City's policies or practices for the design and construction of publicly funded construction projects"); *Stephens v. Shuttle Assocs., L.L.C.*, 547 F. Supp. 2d 269, 278 (S.D.N.Y. 2008) (dismissing ADA claim alleging that bus driver told plaintiff "to power off her wheelchair" because this was "an isolated incident," and no facts "indicate[d] that [defendants] failed to adopt policies or procedures to effectively train their employees how to deal with disabled individuals"); *Moranos v. Royal Caribbean Cruises, Ltd.*, 565 F. Supp. 2d 1337, 1339 (S.D. Fla. 2008) (dismissing Title III claim alleging that defendant did not "provid[e] a crew member to assist the wheelchair bound [plaintiff] in disembarking from the vessel" because the fact that there were "no similar incidents" on the plaintiff's "six earlier cruises" showed that this "was an isolated incident," and did not support the conclusion that the defendant "has a policy or pervasive practice of not helping wheelchair bound customers to embark or disembark").

To state a claim of disability discrimination under Title III of the ADA, "a plaintiff must show (1) discrimination on the basis of a disability; (2) in the full and equal enjoyment of goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor or operator." *Harty v. Burlington Coat Factory of Pa., L.L.C.*, No. 11-01923, 2011 WL 2415169, at *9 (E.D. Pa. June 16, 2011).  It is neither discrimination nor a denial of the full and equal enjoyment of The Franklin Institute's benefits to require payment for the admission of someone providing personal care assistance including a companion or a PCA to a limited-admission event for which payment is charged to attendees.

Guidance promulgated by the DOJ, whose "views are entitled to deference" "[a]s the agency directed by Congress to issue implementing regulations, *see* 42 U.S.C. § 12186(b), to render technical assistance explaining the responsibilities of covered individuals and institutions, § 12206(c), and to enforce Title III in court, § 12188(b)," makes clear that public accommodations are not required to give complimentary admission to family members, companions, care assistants, or anyone else accompanying an individual with disabilities to limited-admission events.  *Bragdon v. Abbott*, 524 U.S. 624, 646 (1998).  Specifically, in July 2011, the DOJ released "guidance on the Department's new nondiscrimination requirements that apply to selling tickets for assigned seats at events such as concerts, plays, and sporting events." U.S. D.O.J. Civil Rights Div., *Ticket Sales* at 1 (July 2011), *available at* http://www.ada.gov/ticketing_2010.pdf.  The DOJ's guidance states, "**People purchasing a ticket for an accessible seat may purchase up to three additional seats for their companions . . . .**"  *Id.* at 4 (emphasis in original).

Notably, while the DOJ's guidance addressed the ADA's nondiscrimination requirements regarding ticket sales, ticket prices, the identification of available accessible seating, purchasing multiple tickets for companions, ticket transfer, the secondary ticket market, the hold and release of tickets for accessible seating, and the prevention of fraud in the purchase of tickets for accessible seating, it did not impose a requirement that a public accommodation provide anyone with complimentary admission to limited-capacity events.

As supported by the DOJ's guidance, The Franklin Institute is not required to provide care assistants with complimentary admission to special temporary exhibits or IMAX and Franklin Theater showings because these are limited-capacity events, to which the DOJ's guidance directly applies.  To gain access to a special exhibit, a museum guest must purchase a ticket allowing entry at a specific date and time. Collins Decl. ¶ 11.  Once the pre-set number of tickets for that timeslot is sold, no additional tickets may be purchased for that timeslot, as it will be "sold out."  *Id.*  IMAX and Franklin Theater showings are also limited-admission events, as there are only 353 fixed seats in The Franklin Institute's IMAX Theater, Def.s' Resps. & Objections to Pls.' Third Set of Requests for Admissions at 3, and only 266 fixed seats in the Franklin Theater, Collins Decl. ¶ 14.  Plaintiffs' counsel acknowledged during the hearing on The Franklin Institute's Motion to Dismiss that "IMAX in the context of the Franklin Institute is a theater with fixed seating," and that, at least when the IMAX is full, a disabled person who is accompanied by a PCA is "going to have to probably pay even for an attendant."  Tr. of Hr'g on Mot. to Dismiss at 25:2-3, 30:22-24.  The Court also stated during the hearing that the special exhibits at The Franklin Institute "have a finite inventory."  *Id.* at 7:11-12.

A thorough search of federal case law does not reveal any court that has required free admission to be provided to PCAs for any limited-admission events.  Indeed, the DOJ's guidance

is consistent with, and naturally stems from, case law on ticket sales at limited-admission venues, which establishes that disabled patrons are entitled only to the same opportunity, rather than special rights, to obtain tickets as non-disabled individuals.  *See Louie v. Nat'l Football League*, 185 F. Supp. 2d 1306, 1309 (S.D. Fla. 2002) (noting that "the ADA does not require the NFL to provide [the plaintiff] or other disabled individuals a ticket to the Super Bowl due to their disabled status, rather, the ADA prohibits the NFL from denying [the plaintiff] and other disabled individuals an opportunity to obtain a Super Bowl ticket"); *Access Now, Inc. v. S. Fla. Stadium Corp.*, 161 F. Supp. 2d 1357, 1367 (S.D. Fla. 2001) (stating that under the ADA, plaintiffs are not "entitled to a benefit which exceeds that available to the general public," and granting defendant's motion for summary judgment because "[t]he Act does not require a facility to afford a disabled guest a greater opportunity to purchase seats than his able-bodied counterpart"); *Indep. Living Res. v. Or. Arena Corp.*, 1 F. Supp. 2d 1159, 1170 (D. Or. 1998) (stating that ADA does not "give persons with disabilities a special right to purchase tickets for events if comparable tickets would not be available to a person without disabilities").  Thus, here, Plaintiffs would be entitled only to the same opportunity to buy tickets as non-disabled individuals—one ticket per person, including PCAs—rather than a special right to obtain a free ticket for a person attending a special exhibit or a movie.  This is the identical practice followed by Plaintiff VFE when it charged an admission price to all individuals who wished to attend its Harlem Globetrotters event, including PCAs accompanying individuals with disabilities.  *See* Coccia Dep. 80:1-10, 80:21-81:1, 81:2-82:17; Coccia Dep. Ex. 3.

The DOJ's guidance is also consistent with the principle found in the Title III regulations that a public accommodation is not required "to provide its customers, clients, or participants with . . . services of a personal nature including assistance in eating, toileting, or dressing."  28

C.F.R. § 36.306.  Place of public accommodation such as The Franklin Institute are not required

to provide personal services to a patron with disabilities, such as PCA services; logically, they

are not required to subsidize the providing of such personal services by others through the

granting of free admission to PCAs.  Section 36.306 thus indicates that just as a public

accommodation is not denying disabled patrons full and equal enjoyment of its benefits when it

refrains from providing them with personal services, it is not denying them full and equal

enjoyment by not subsidizing those same personal services.

In addition, requiring a public accommodation to give complimentary admission to PCAs

could create financial difficulties for the public accommodation.  The Franklin Institute must pay

its exhibit partners fees related to each special exhibit.  Collins Decl. ¶ 8.  If The Franklin

Institute gives away a ticket to a special exhibit for free, it will lose a sale for that timeslot.  *Id.* ¶

12.  Similarly, The Franklin Institute must pay fees and costs to the appropriate film studios or

distributors for the films screened at the IMAX Theater and Franklin Theater.  Collins Dep. 69:8-

11.

Because The Franklin Institute is in compliance with the DOJ's guidance on ticket sales,

and because of the practical problems presented by requiring free admission for PCAs, Plaintiffs'

demand that PCAs receive free admission to The Franklin Institute's special temporary exhibits

and IMAX and Franklin Theater showings does not constitute a reasonable modification of The

Franklin Institute's policies.  *See Disabled in Action of Pa. v. Nat'l Passenger R.R. Corp.*, 418 F.

Supp. 2d 652, 658 (E.D. Pa. 2005) (granting summary judgment to defendant because "nothing

in either Part A or Part B of Title II or its regulations requires Amtrak to provide the

accommodations requested by the plaintiffs that exceed the mandate of Part B").  Thus,

Plaintiffs' remaining claims must be dismissed with prejudice.

      2.      **Paid PCAs like those used by Plaintiffs are "companions" under the DOJ's guidance on ticketing for limited-admission events.**

In their earlier Opposition to Defendant's Motion to Dismiss, Plaintiffs argued that the DOJ's guidance on ticket sales does not apply to their PCAs because it applies only to "companions," and "companions" include only family members and friends, but not paid attendants.  DE 15 at 20.

However, in the hearing on The Franklin Institute's Motion to Dismiss, Plaintiffs' counsel acknowledged that, at least when the IMAX is full, a disabled person who is accompanied by a PCA is "going to have to probably pay even for an attendant."  Tr. of Hr'g on Mot. to Dismiss at 30:22-24.

Moreover, the Title III regulations and analogous case law demonstrate that care assistants such as PCAs are "companions."  The ADA's implementing regulations define "companion" as "a family member, friend, or associate of an individual seeking access to, or participating in" a public accommodation's program.  28 C.F.R. § 36.303(c)(1)(i).  PCAs like the ones at issue here fall squarely within this broad definition because a family member (like Ana Pacheco, mother of Joel Pacheco) or a friend could act as a PCA, there are no special qualifications needed in order to be hired as a PCA, and a paid PCA is an "associate of an individual seeking access to, or participating in" a public accommodation's program.  *Id.* Further, case law generally does not distinguish between attendants and companions, whether paid or unpaid.  *See, e.g.*, *Siebert v. Astrue,* No. 09–194, 2010 WL 4810705, at *6 (W.D. Pa. Nov. 19, 2010) (stating that plaintiff "last worked in 2005 as a personal care aide/companion"); *Stewart v. Weis Markets, Inc.*, 890 F. Supp. 382, 388 (M.D. Pa. 1995) (stating that plaintiff "was hired as a companion aide"); *Pluck v. Astrue*, No. 10–CV–02042, 2011 WL 917654, at *2 (E.D.N.Y. Mar. 8, 2011) ("From August 2004 until October 2004, Pluck worked as a home

health aide or companion to individual patients . . . ."); *Lindamood v. Astrue*, No. 5:10cv00033, 2011 WL 250318, at *1 (W.D. Va. Jan. 26, 2011) (stating that plaintiff worked as "a companion/personal aide on one occasion").  Accordingly, Plaintiffs' attempt to create a new category of individuals in order to create an exception that simply does not exist must fail and the DOJ's guidance on ticketing must be followed.

### 3.    Even if a limited-seating venue is not full, complimentary admission for PCAs is not required.

Insofar as Plaintiffs claim that their PCAs must receive free admission to The Franklin Institute's special temporary exhibits or IMAX and Franklin Theater showings if they are not full, their claim lacks merit.  Tr. of Hr'g on Mot. to Dismiss at 32:12-15 (Plaintiffs' counsel stating, "[I]f it's full, they've got to pay; if it's not, reasonable modification and the person with the disability requires the attendant to enjoy the benefit of the good, right?").

The DOJ's guidance on ticket sales does not create an exception if the venue is not full. The DOJ's guidance states simply that "**[p]eople purchasing a ticket for an accessible seat may purchase up to three additional seats for their companions**."  U.S. D.O.J. Civil Rights Div., *Ticket Sales* at 4 (July 2011), *available at* http://www.ada.gov/ticketing_2010.pdf (emphasis in original).  Moreover, cases establishing that disabled patrons are entitled only to the same opportunity, rather than special rights, to obtain tickets as non-disabled individuals do not distinguish between situations in which tickets are sold out and those in which tickets are still available.  Thus, in *Louie*, the court dismissed a complaint alleging that a "lottery ticket disbursement process" for Super Bowl tickets "disenfranchises disabled customers [of] their right to obtain *available* accessible seats"—*i.e.*, seats that had not been sold out yet.  *Louie*, 185 F. Supp. 2d at 1308 (emphasis added).

A rule that a disabled patron's PCA must receive free admission if a limited-capacity event is not full would fall afoul of the statement in *Independent Living Resources* that the ADA does not "give persons with disabilities a special right to purchase tickets for events if comparable tickets would not be available to a person without disabilities." *Indep. Living Res.*, 1 F. Supp. 2d at 1170. Complimentary tickets for companions are not available to persons without disabilities.

Moreover, such a rule would be unworkable. For example, even if a limited-admission event is not yet full at the time that a disabled patron with a PCA obtains free admission for the PCA, the event might become sold out later (perhaps even at the last minute), in which case the public accommodation would have given up without compensation one of the finite number of seats. Giving a disabled person with a PCA the "special right," *Indep. Living Res.*, 1 F. Supp. 2d at 1170, of free admission for the PCA would thus undermine the balance achieved in the DOJ's guidance—which, in this Court's words, "deals with a limited seating venue" with "a finite number of seats"—and in the cases on ticketing in "finite venue[s] . . . where if an institution were to give up a seat they couldn't sell it," Tr. of Hr'g on Mot. to Dismiss at 7:4-6, 8:25-9:1.

Because the DOJ's guidance applies to all limited-admission venues, whether sold out or not, Plaintiffs are not entitled to complimentary admission for their PCAs to The Franklin Institute's special temporary exhibits or IMAX and Franklin Theater showings.

## V.    **CONCLUSION**

For the reasons set forth above, The Franklin Institute respectfully requests this Court to grant its Motion for Summary Judgment and dismiss the remaining Counts I, II, and III of the Complaint with prejudice.

Dated:  December 1, 2015

Respectfully submitted,

*s/Anne Marie Estevez*

Anne Marie Estevez
Admitted *Pro Hac Vice*
Fla. Bar No. 991694
E-mail: aestevez@morganlewis.com
Beth S. Joseph
Admitted *Pro Hac Vice*
Fla. Bar No. 0062952
E-mail: bjoseph@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
200 South Biscayne Boulevard, S-5300
Miami, FL 33131-2339
Tel.: 305.415.3330
Fax: 305.415.3000

Cailin Heilig
(I.D. No. 309894)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19102
Tel:  215.963.5546
Fax: 215.963.5001
E-mail: cheilig@morganlewis.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically and is available for viewing and downloading from the ECF system of the U.S. District Court for the Eastern District of Pennsylvania, and that I served the same via electronic filing on December 1, 2015 upon the following:

Stephen F. Gold, Esq.
(I.D. No. 09880)
1709 Benjamin Franklin Institute Pkwy
Second Floor
Philadelphia, PA  19103
Tel:  215.627.7100 ext. 227
Fax:  215.627.3183
E-mail:   Stevegoldadal@gmail.com


*s/Anne Marie Estevez*
Anne Marie Estevez